UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JULY DODSON, TENADORE FOWLER, and RYAN TAMM, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DESTINATION XL GROUP, INC., d/b/a DXL BIG + TALL,<br><br>Defendant. | CASE NO. 2:26-cv-866<br><br>**NOTICE OF REMOVAL** |

Defendant DESTINATION XL GROUP, INC., d/b/a DXL BIG + TALL ("Defendant"), hereby respectfully submits this Notice of Removal, removing the above-captioned action from the Superior Court of the State of Washington, King County (hereafter, the "State Court Action") to the United States District Court for Western District of Washington, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. In support thereof, Defendant respectfully states as follows:

**PROCEDURAL HISTORY, TIMELINESS, AND JOINDER**

1. The State Court Action was commenced on February 12, 2026 by Plaintiffs JULY DODSON, TENADORE FOWLER, and RYAN TAMM (collectively, "Plaintiffs") by the filing of a putative class action complaint (the "Complaint") in the Superior Court of the State of Washington, King County, Case No. 26-2-05686-2 SEA, alleging various claims against Defendant (*see* ¶¶ 5-6).

2. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the Complaint is attached hereto as **Exhibit A**. True and correct copies of all other process, pleadings, and orders served upon



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

Defendant or filed in the State Court Action (if any) are attached hereto as **Exhibit B**.

3. Defendant was purportedly served with process in the State Court Action on February 13, 2026. *See* Exhibit A. This Notice of Removal, filed within 30 days from when Defendant was purportedly served with process, is therefore timely pursuant to 28 U.S.C. § 1446(b).

4. No other defendants have been named in the State Court Action and, therefore, joinder of additional defendants to this Notice of Removal is unnecessary.

**RELEVANT ALLEGATIONS**

5. In the Complaint, Plaintiffs seek relief from Defendant, individually and on behalf of similarly-situated Washington residents, pursuant to (1) the Washington Commercial Electronic Mail Act, codified at chapter 190 of title 19 of the Revised Code of Washington (or "RCW"), specifically, Wash. Rev. Code § 19.190.020 *et seq.* (hereafter, the "CEMA") in Count I, and (ii) the Washington Consumer Protection Action, codified at chapter 86 of title 19 of the RCW, specifically, Wash. Rev. Code § 19.86.020 *et seq.* (hereafter, the "CPA") in Count II. *See generally,* Exhibit A.

6. In particular, Plaintiffs' Complaint and the attachments thereto allege, *inter alia,* that (i) Plaintiffs collectively received at least 19 supposedly "false" or "misleading" emails about "limited time" sales in purported violation of the CEMA and the CPA between February 2023 and December 2025; (ii) they seek to represent a putative class of Washington residents over a four-year class period; (iii) there are potentially "thousands" of putative class members who received similar emails; (iv) Defendant "has sent over one thousand three hundred twenty-six (1,326) marketing emails, averaging over three emails per day" in just the past 12 months; and (v) Plaintiffs and the putative class members are entitled to injunctive relief and certain financial relief, including actual damages, statutory damages, and/or treble damages as well as "costs of suit, including reasonable attorneys' fees." *Id.*, ¶¶ 7, 32, 42, 46-87, 96-107, 110, 112, 114, 118, 127, 137 and Prayer for Relief.

7. Defendant strongly disputes all of Plaintiffs' allegations, believes the Complaint lacks merit and fails to state a claim for relief, and denies that Plaintiffs or the putative class have been harmed in any way or that this case is capable of or appropriate for class treatment. And though discussed below for purposes of removal, Defendant disputes whether the Plaintiffs or any putative


MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

class member is entitled to any of the relief requested in the Complaint or generally (including but not limited to damages, injunctive relief, or attorneys' fees and costs). By seeking removal, therefore, Defendant does not waive any arguments or defenses with respect to Plaintiffs' claims or to certification, the Complaint or otherwise in this matter, including but not limited to jurisdictional defenses or any contractual rights to compel arbitration.[1] For the reasons set forth below, however, this Court has federal jurisdiction over the State Court Action and thus removal to this Court is proper.

**BASIS AND GROUNDS FOR JURISDICTION AND REMOVAL**

8. A defendant seeking to remove a case to federal court need only file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a).

9. As grounds for removal in this instance, Defendant submits that the Court has proper federal jurisdiction over this matter for two reasons. First, there is diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Second, the Court has federal subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. § 1332(d)(2) & (5).

**DIVERSITY JURISDICTION**

10. For diversity removal, the Court has original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and is between "citizens of different States." 28 U.S.C. § 1332(a). Both requirements are met here.

11. Amount in Controversy: Defendant need only show a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *See Academy of Country Music v. Continental Casualty Co.,* 991 F.3d 1059, 1068-70 (9th Cir. 2021) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). Generally, "[t]he amount in controversy is the 'amount at stake in the underlying litigation.'" *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016)). Courts in the Ninth Circuit have recognized that "[t]he amount in controversy [requirement] embraces '[monetary relief], costs of compliance with injunctions, attorneys' fees

[1] Nothing in this Notice of removal should be construed as an admission of liability or of any fact.


MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

awarded under contract or fee shifting statutes' and 'future attorney's fees recoverable by statute or contract.'" *Frias-Estrada v. Trek Retail Corp.*, 534 F. Supp. 3d 1058, 1061 (N.D. Cal. 2021) (quoting *Fritsch*, 899 F.3d at 794) (discussing removal under CAFA); *see also Gonzales,* 840 F.3d at 648-649 (ruling similarly in the diversity removal context) (citing *Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042, 1046 n.3 (9th Cir. 2000)); *Trepanier v. Progressive Direct Ins. Co.,* 2012 WL 12882865, at *2 (W.D. Wash. Sept. 19, 2012) ("[T]he amount in controversy includes not just actual damages, but also statutorily authorized attorneys' fees and treble damages."); *Lewis v. Verizon Comm'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.").

12. "Although CEMA does not provide a private right of action for damages, recipients of commercial e-mails containing false or misleading subject lines can sue for injunctive relief." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1002 (W.D. Wash. 2019) (citing *Wright v. Lyft, Inc.*, 406 P.3d 1149, 1155 n. 3 (Wash. 2017) and Wash. Rev. Code § 19.190.090(1)). However, "[i]n addition to the injunctive relief available under CEMA, a recipient of an unlawful commercial e-mail can bring a civil action against the sender under the CPA for either statutory or actual damages." *Id*. (citing *Gragg v. Orange Cab Co., Inc.,* 145 F. Supp. 3d 1046, 1051 (W.D. Wash. 2015)). In other words, a violation of the CEMA may amount to a violation of the CPA, which permits plaintiffs to seek monetary relief—*i.e.,* either $500 in statutory damages or their actual damages, whichever is greater. *Id*. at 1002 and 1007 (collecting cases). Treble damages are also permitted under the CPA, but they are capped at $25,000 and are only as to actual damages, not statutory damages. *See Hodgell v. Andersen Corp.,* 2023 WL 4558834, at *2 (W.D. Wash. July 17, 2023) (citing, *inter alia,* Wash. Rev. Code § 19.86.090 (allowing for treble damages up to $25,000 for "actual damages")). The CPA also permits plaintiffs to seek recovery of reasonable attorneys' fees and costs. *See Abrams v. Sequium Asset Sols., LLC,* 2023 WL 2757195, at *13 (W.D. Wash. Mar. 31, 2023) (citing Wash. Rev. Code § 19.86.090 and *Mason v. Mortg. Am., Inc.*, 792 P.2d 142, 149 (Wash. 1990)).

13. As applied here, Plaintiffs allege that they collectively received at least 19 emails in purported violation of the CEMA and CPA in a roughly two to three year period, and that they are



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

entitled to injunctive relief and certain financial relief, including actual damages, statutory damages, and/or treble damages as well as "costs of suit, including reasonable attorneys' fees." *See* Exhibit A, ¶¶ 96-107, 137 and Prayer for Relief. They do not purport to have suffered any actual damages, however. Assuming Plaintiffs recover maximum statutory damages of $500 per alleged communication (19 total), the amount in controversy would only be $9,500, excluding attorneys' fees, which may also be considered for calculating the amount in controversy for removal purposes. *See, e.g.*, *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("[W]here an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy."). Accounting for fees here easily puts Plaintiffs over the threshold for removal. Indeed, Plaintiffs appear to have at least eight attorneys representing them, from 3 different law firms. *See* Exhibit A at p. 21. Conservatively estimating at least 100 hours of time at a fee rate of $400 per hour for at least two of Plaintiffs' attorneys, that alone would exceed the $75,000 statutory threshold.[2] And that is *before* the Court takes into account Plaintiffs' request for injunctive relief, which may also be considered to calculate the amount in controversy for purposes of a diversity removal and would push the case further above the threshold, if considered. *See, e.g.*, *In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2001), *cert. granted in part sub nom. Ford Motor Co. v. McCauley*, 534 U.S. 1126 (2002), *and cert. dismissed*, 537 U.S. 1 (2002); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 405 (9th Cir. 1996).[3] For all of these reasons, therefore, the amount of controversy requirement under Section 1332(a) is satisfied.

14. Diversity of Citizenship: As to diversity of citizenship, Plaintiffs are alleged to be residents/citizens of Washington, and seek to represent a class of only Washington residents. *See* Exhibit A, ¶¶ 10-11, 110. For corporations, citizenship for diversity purposes is determined by the states in which the entities are incorporated and/or have their principal place of business. *See* 28 U.S.C. § 1332(c)(1) and 28 U.S.C. § 1446(c). *See also Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010) (dismissing the requirements for corporate citizenship). Here, Plaintiffs allege that Defendant

[2] Two attorneys at $400 per hour each, for 200 total hours between them, is $80,000 in fees.

[3] *See* discussion at ¶¶ 22-23, *infra* regarding calculating the value of injunctive relief here.



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

is a Delaware foreign corporation with its principal place of business in Massachusetts. *See* Exhibit A, ¶12. Therefore, there is complete diversity of citizenship in this case.

15. As such, all the statutory requirements are satisfied for diversity removal purposes.

**CAFA JURISDICTION**

16. Under CAFA, there are essentially three requirements for removal. The statute provides that (1) "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs"; (2) the case "is a class action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant" (i.e., minimal diversity), and (3) the proposed class must contain at least 100 persons. 28 U.S.C. § 1332(d)(2) & (5). As discussed below, all three CAFA removal requirements are met.

17. First, the State Court Action is indisputably a "class action" under 28 U.S.C. § 1332(d)(2), because Plaintiffs seek to represent a class of similarly situated individuals pursuant to the Washington State Rules of Civil Procedure.[4] *See* Exhibit A, ¶ 110.

18. Second, there also is undoubtedly minimal diversity between Plaintiffs and members of the putative class, on the one hand, and Defendant, on the other. In fact, as noted above, there is complete diversity of citizenship, since Plaintiffs and the putative class members are all Washington residents/citizens and Defendant is not a Washington citizen. *See* discussion at ¶ 14, *supra.*

19. Third, as to the possible number of putative class members and amount in controversy requirement, the removal statute requires only a "short and plain" statement of the number of class members and amount in controversy, and thus the statement "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co.*, 574 U.S. at 84. Further, a defendant's notice of removal under CAFA "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. Evidence establishing the amount is required "only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* In other words, removal need not be supported by evidence, and can be based on the allegations in the Complaint

---

[4] CAFA applies to "any civil action filed under [R]ule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure." 28 U.S.C. §§ 1332(d)(1)(B), 1453(a) & (b).



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

and reasonable assumptions, deductions, and inferences to be drawn thereon—unless "the plaintiff contests, or the court questions, the defendant's allegation[s]" as to the bases for removal. *Id. See also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) and *Arias v. Residence Inn by Marriott,* 936 F.3d 920, 922 (9th Cir. 2019). At bottom, the burden to establish the jurisdictional amount under CAFA "is not 'daunting,' as courts recognize that under this standard, a removing defendant is not obligated to 'research, state and prove the plaintiff's claims for damages.'" *Korn v. Polo Ralph Lauren Corp.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994)). *See also Jauregui v. Roadrunner Transp. Servs., Inc.,* 28 F.4th 989, 993 (9th Cir. 2022) (reversing district court's order remanding the action to state court due to an "inappropriate demand of certitude from [the defendant] over its assumptions used in calculating the amount in controversy" for purposes of CAFA removal).

20. As applied here, the possible class size and amount in controversy exceed the requisite minimums under CAFA based on the face of Plaintiffs' Complaint. As noted above (*see* ¶ 6, *supra*), the Complaint and the attachments thereto allege, in pertinent part, that (i) Plaintiffs collectively received approximately 19 supposedly false or deceptive emails in purported violation of the CEMA and the CPA between February 2023 and December 2025; (ii) they seek to represent a putative class of Washington residents over a four-year class period; (iii) there are potentially "thousands" of putative class members who received similar unlawful emails; and (iv) Defendant "has sent over one thousand three hundred twenty-six (1,326) marketing emails, averaging over three emails per day" in just the past 12 months. It also seeks to enjoin Defendant from all "further violations" of the CEMA or the CPA. Exhibit A, ¶ 137. This meets the CAFA class size and amount in controversy.

21. On this front, Plaintiffs concede that there are over 100 potential class members, by concluding that there are "potentially thousands." As to the amount in controversy, there are several ways to calculate it. For example, taking just the number of emails (1,326) that Plaintiffs speculate Defendant has sent in just the past 12 months, multiplying that by the alleged four year class period, and assuming that each email could result at least $500 in statutory damages under the CPA, means



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

that there could be a little over $2.6 million in controversy just for potential statutory damages.[5] However, this does not take into account Plaintiffs' requests for fees or for injunctive relief. As to the former, while it is fair to assume the eight attorneys representing Plaintiffs are going to spend more than 200 hours each on this case, the Court need not go down that road yet because factoring in just the injunctive relief springs the case well over the CAFA threshold, even without damages.

22. Generally, the amount in controversy is measured by the value of the object of the litigation. *See Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017); *Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1045 n.2 (9th Cir. 2011); *Hunt v. Wash. St. Apple Advertising Comm'n,* 432 U.S. 333, 347 (1977). When evaluating the value of an injunction for calculating the amount in controversy in the Ninth Circuit, the amount in controversy is assessed through the "either viewpoint rule," meaning that the amount in controversy is the pecuniary result to either party which the judgment would directly produce. *Corral*, 878 F.3d at 775; *see also Lokey v. CVS Pharmacy, Inc.*, 2020 WL 5569705, at *5 (N.D. Cal. Sept. 17, 2020) (citing *In re Ford Motor Co./Citibank*, 264 F.3d at 958). *See also Enriquez v. Sirius XM Radio, Inc.*, 2022 WL 4664144, at *2 (E.D. Cal. Sept. 30, 2022) ("Under this rule, whichever party stands to gain or lose a greater amount is the viewpoint and amount that is considered for the amount in controversy."). As one court held, "the requirement of the statutory minimum amount in controversy can be satisfied in an injunctive case . . . by showing [*inter alia*] that the injunction would force the defendant to forgo a benefit to him that is worth more than the threshold amount specified in the diversity statute…." *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997). *See also Hunt*, 432 U.S. at 347 (recognizing that value of an injunction from defendant's perspective includes loss of sales of product at issue in litigation, holding "[s]uch costs of compliance are properly considered in computing the amount in controversy"). In other words, what is relevant on this point under the "either viewpoint rule" is not just how the injunction impacts Plaintiffs but also how the injunction impacts Defendant—such as (for example) in terms of revenue it would forego as a result.

[5] Specifically, 1,326 emails X 4 years X $500 = $2,652,000 in potential monetary damages.



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

23. As applied here, complying with an injunction to stop all "further violations" of the CEMA or the CPA (Exhibit A, ¶ 137), would effectively cause Defendant to have to cease the alleged activity *nationwide*—*i.e.*, to stop all emails about "limited time" sales, which is a very common practice in the retail industry and not remotely misleading or false—even if such activity is not unlawful in the other states where it does business. That is because there is no way to tell from email addresses who might be a Washington resident and thus might have a claim. Complying with such an injunction could result, *inter alia*, in Defendant losing untold millions of dollars in sales revenue nationally that may have been generated from such email ads. *See also Enriquez*, 2022 WL 4664144, at *2 (discussing the costs of compliance would include the "new training for thousands of personnel at dozens of locations around the globe and would require modifying internal customer relations management systems, producing training materials, holding training session, and employing quality controls across its global service operation" and noting how "[t]he requested injunction would also result in lost revenues and require [defendant] to change its marketing strategy").

24. Regardless of injunctive relief, however, reasonable assumptions based on the allegations in the Complaint put Plaintiffs well over the CAFA amount in controversy threshold in this case. *See, e.g., Kleinsasser v. Progressive Direct Ins. Co.*, 2018 WL 3471185, at *11 (W.D. Wash. July 19, 2018) (finding that the defendant's "overall chain of reasoning and assumptions are reliable" even if the proposed model "overestimates some individual damages" and concluding that the removing defendant met its burden to establish that the amount in controversy exceeds $5 million); *Jauregui*, 28 F.4th at 993 ("As is inescapable at this early stage of the litigation, the removing party must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceed $5 million,' so long as the reasoning and underlying assumptions are reasonable.") (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)). In this regard, while they oddly speculate a specific number of emails Defendant has supposedly sent in the past 12 months, Plaintiffs do not specify how many allegedly unlawful emails that they each received that year or in the past four years, and appear to allege a total of approximately 19 emails in the aggregate from February 2023 and December 2025,



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

which is less than the stated class period (thus, there could be more). Plaintiffs do however, allege, that their experiences are "typical" of the "thousands" of putative class members. *See* Exhibit A, ¶ 116. All this can be used to calculate the amount in controversy under CAFA in the present case.[6]

25. Assuming *arguendo* that (i) the Plaintiffs each received at least six violative emails for the entire class period, (ii) so did the "thousands" of potential class members that Plaintiffs assert there could be (*i.e.*, that there are at least 2,000 members who received at least six such emails), and (iii) there is potentially $500 in statutory damages per email, there could be **$6 million** in controversy in this case.[7] And that is *before* factoring in fee awards or injunctive relief, which would simply push the amount in controversy even further over the CAFA threshold.[8] Therefore, while Defendant does not concede (in fact strongly disputes) liability, that a class is certifiable, or that Plaintiffs or any class member is entitled to any recovery (including fees or injunctive relief),[9] the alleged class size and amount in controversy here exceed the requisite CAFA minimums.

26. In sum, removal under CAFA is proper in this case, based on the allegations in the Complaint and the reasonable assumptions discussed above, because (a) the State Court Action is a

---

[6] "Using the named Plaintiffs as 'typical' class members and multiplying their claims by the number of persons estimated in a class is precisely how courts generally determine the estimated amount in controversy" under CAFA because "[o]therwise, the amount of evidence required to answer this preliminary pleading question could be astronomical and would in fact be a demand for proof, when at this stage, demonstrating the amount in controversy is a pleading requirement." *Doss v. Am. Fam. Home Ins. Co.*, 47 F. Supp. 3d 836, 840 (W.D. Ark. 2014) (collecting cases); *see also Napoli v. HSBC Mortg. Servs. Inc.,* 2012 WL 3715936, at *2 (D.N.J. Aug. 27, 2012) (ruling similarly).

[7] Specifically, 6 emails per class member X 2000 class members X $500 per email = $6,000,000.

[8] A fee award in a certified class action can often amount to 25% of class recovery (or more), which could increase the amount in controversy here by 25% or, put another way, to 125% of the class's claimed recovery. *See, e.g., Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012) (stating that fee award of 25% of class recovery was "not unreasonable"). *See also Hanlon v. Center for Auto Safety,* 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%). *Dawsey v. Travelers Indem. Co*., 2015 WL 4394545, at *3 (W.D. Wash. July 16, 2015) (allowing attorneys' fees of 25% of compensatory damages for CAFA amount in controversy calculation).

[9] *See also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial … because they are not stipulating to damages suffered, but only estimating the damages that are in controversy.").



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

proposed "class action," (b) there are at least 100 potential class members, (c) there is minimal diversity of citizenship; and (c) the potential amount in controversy exceeds $5,000,000.

27. Lastly, CAFA's "home-state" and "local controversy" exceptions do not apply to this removal. The "home-state" exception prevents CAFA removal only when all "primary defendants" are citizens of the state in which the action was filed. 28 U.S.C. § 1332(d)(4)(B); *Phillips v. Kaiser Found. Health Plan, Inc.,* 953 F. Supp. 2d 1078, 1086 (N.D. Cal. 2011) ("[Home state] test requires that all 'primary defendants' be residents of the same state in which the action is filed"). Likewise, under the "local controversy" exception, at least one of the defendants must be "a citizen of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A). As discussed above, Defendant is not a citizen of Washington, so neither of these exceptions apply. In addition, this action does not involve those claims identified in the CAFA exception found at 28 U.S.C. § 1332(d)(9).

**VENUE**

28. Venue is proper in this District Court pursuant to 28 U.S.C. §1441(a), because the State Court Action was brought in the Superior Court of the State of Washington, King County, which is in the same District as this Court.

**CONCLUSION**

29. Defendant, having satisfied all requirements for removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, respectfully submits this Notice of Removal, requests that the State Court Action be removed to this Court, and that the Court assume full jurisdiction over the case herein as provided by law.

30. Written notice of the filing of this Notice of Removal and the removal of the State Court Action is being delivered to Plaintiffs through Plaintiffs' counsel of record. A copy of this Notice of Removal will be filed promptly with the Clerk of the Court in the State Court Action, as required by 28 U.S.C. § 1446(d).

31. Defendant hereby reserves all rights to assert any available defenses or affirmative matters as to the allegations in the Complaint or that may be asserted against Defendant in this matter, including, without limitation, motions to dismiss pursuant to Fed. R. Civ. P. 12, the right to move to



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

compel arbitration, as well as the right to amend or supplement this Notice of Removal.

WHEREFORE, Defendant respectfully removes this civil action to this Court.

Dated: March 13, 2026

Respectfully submitted,

By: s/ *Rossi F. Maddalena*

Rossi F. Maddalena, WSBA #39351
**MERRICK, HOFSTEDT & LINDSEY, P.S.**
3101 Western Avenue, Suite 200
Seattle, WA 98121
Tel. (206) 682-0610
Email: rmaddalena@mhlseattle.com

John W. McGuinness (*pro hac vice* forthcoming)
A. Paul Heeringa (*pro hac vice* forthcoming)
**MANATT, PHELPS & PHILLIPS, LLP**
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
JMcGuinness@manatt.com
PHeeringa@manatt.com

***Attorneys for Defendant***

## DECLARATION OF SERVICE

I declare that I am a citizen of the United States of America, a resident of the State of Washington, am over the age of twenty-one years, am not a party to this action and am competent to be a witness herein. I declare that I caused to be served as indicated below:

| | |
|---|---|
| Samuel J. Strauss, WSBA No. #46971<br>Raina C. Borrelli*<br>**STRAUSS BORRELLI PLLC**<br>980 N. Michigan Avenue, Suite 1610<br>Chicago, IL 60611<br>Telephone: (872) 263-1100<br>Facsimile: (872) 263-1109 | [x] E-Service<br>[x] E-mail<br>[x] US Mail<br>[ ] Messenger/Process Service<br><br>Email: sam@straussborrelli.com<br>Email: raina@straussborrelli.com |
| Lynn A. Toops*<br>Natalie A. Lyons*<br>Ian R. Bensberg*<br>**COHENMALAD, LLP**<br>One Indiana Square, Suite 1400<br>Indianapolis, IN 46204<br>Tel.: (317) 636-6481 | Email: ltoops@cohenmalad.com<br>Email: nlyons@cohenmalad.com<br>Email: ibensberg@cohenmalad.com |
| Gerard J. Stranch, IV*<br>Michael C. Tackeff*<br>Andrew K. Murray*<br>**STRANCH, JENNINGS & GARVEY, PLLC**<br>223 Rosa L. Parks Avenue, Suite 200<br>Nashville, TN 37203<br>Tel.: (615) 254-8801<br><br>*Attorneys for Plaintiffs*<br><br>*Applications for admission pro hac vice forthcoming | Email: gstranch@stranchlaw.com<br>Email: mtackeff@stranchlaw.com<br>Email: amurray@stranchlaw.com |

EXECUTED this 13th day of March, 2026, at Seattle, Washington

*/s/ Harry Cho*
Harry Cho, Legal Assistant