The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

JULY DODSON, TENADORE FOWLER, and RYAN TAMM, on their own behalf and on behalf of others similarly situated,

                                    Plaintiffs,

        v.

DESTINATION XL GROUP, INC., d/b/a DXL BIG + TALL,

                                    Defendant.

CASE NO. 2:26-cv-00866-JNW

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

**NOTED FOR MOTION CALENDAR:
FRIDAY, MAY 8TH, 2026**

Action Filed: February 12, 2026
Date Removed: March 13, 2026

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

## TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................................... 1

RELEVANT ALLEGATIONS ...................................................................................................... 3

APPLICABLE LEGAL STANDARDS......................................................................................... 3

ARGUMENT .................................................................................................................................. 4

I.      PLAINTIFFS DO NOT PLAUSIBLY ALLEGE A CEMA VIOLATION. ........................ 4

      A.      Plaintiffs Do Not Plausibly Allege Any False or Misleading Statements.............. 4

      B.      Plaintiffs Do Not Plausibly Allege DXL Knew or Had Any Reason to Know that the Subject Emails were Sent to Emails Held By Washington Residents. ........................................................................................................... 6

II.     THE FEDERAL CAN-SPAM ACT PREEMPTS PLAINTIFFS' STATE LAW CEMA CLAIMS AND FURTHER REQUIRES DISMISSAL. ........................................... 8

III.    PLAINTIFFS' CEMA CLAIMS FAIL ON CONSTITUTIONAL GROUNDS............... 13

      A.      CEMA Violates Due Process Because it is Excessively Punitive.......................... 13

      B.      CEMA Violates the Dormant Commerce Clause.................................................... 14

      C.      CEMA Violates the First Amendment. ................................................................... 17

IV.    PLAINTIFFS' CPA CLAIMS ALSO FAIL. ...................................................................... 18

V.     ANY DISMISSAL SHOULD BE WITH PREJUDICE. ..................................................... 19

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

i

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

# TABLE OF AUTHORITIES

**Page**

## CASES

*Albrecht v. Lund,*
845 F.2d 193 (9th Cir. 1988) ...............................................................................19

*Altria Group, Inc. v. Good,*
555 U.S. 70 (2008).................................................................................................8

*Ambach v. French,*
167 Wash.2d 167 (2009).......................................................................................19

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...............................................................................................4

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)...........................................................................................4, 5

*Bly-Magee v. California,*
236 F.3d 1014 (9th Cir. 2001) .............................................................................12

*BMW of N. Am., Inc. v. Gore,*
517 U.S. 575-85 (1996) ........................................................................................14

*Booth v. Appstack, Inc.,*
2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) .................................................15

*BP W. Coast Prods., LLC v. Shalabi,*
2012 WL 2277843 (W.D. Wash. June 14, 2012)..................................................11

*Brown v. Old Navy, LLC,*
4 Wash. 3d 580, 595 (2025)...........................................................................5, 6, 9

*Brummett v. Wash.*
*'s Lottery,* 171 Wn. App. 664, 678 (2012) ..........................................................11

*Castillo v. Prime Hydration LLC,*
748 F. Supp. 3d 757 (N.D. Cal. Sept. 9, 2024) .....................................................7

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
447 U.S. 557 (1980)..............................................................................................17

*Cervantes v. Countrywide Home Loans, Inc.,*
656 F.3d 1034 (9th Cir. 2011) .............................................................................19

*Conservation Force, Inc. v. Manning,*
301 F.3d 985 (9th Cir. 2002) ...............................................................................14

*Daniels Sharpsmart, Inc. v. Smith,*
889 F.3d 608 (9th Cir. 2018) ...............................................................................17

*Dewar v. Smith,*
185 Wn. App. 544 (2015) .....................................................................................13

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
751 F.3d 990 (9th Cir. 2014) .............................................................................5, 6

*Edwards v. Marin Park, Inc.,*
356 F.3d 1058 (9th Cir. 2004) .............................................................................12

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

ii

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

*Elcon Constr., Inc. v. E. Wash. Univ.*,
    174 Wn.2d 157 (2012) ...............................................................................................10

*Gabertan v. Walmart, Inc.*,
    523 F. Supp. 3d 1254 (W.D. Wash. 2021)..................................................................19

*Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*,
    86 Wn. App. 732 (1997) ............................................................................................19

*Gordon v. First Premier Bank, Inc.*,
    2009 WL 5195897 (E.D. Wash. Dec. 21, 2009)....................................................1, 8

*Gordon v. Virtumundo*,
    575 F.3d 1040 (9th Cir. 2009) ............................................................................ passim

*Gragg v. Orange Cab Co.*,
    942 F. Supp. 2d 1111 (W.D. Wash. 2013)..................................................................19

*Great Pac. Sec. v. Barclays Cap., Inc.*,
    743 F. App'x 780 (9th Cir. 2018) .........................................................................11, 13

*Gutierrez v. Converse Inc.*,
    2024 WL 2106952 (C.D. Cal. May 2, 2024) ...............................................................7

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
    105 Wash. 2d 778 (1986).............................................................................................18

*Haskins v. Symantec Corp.*,
    654 F.App'x 338 (9th Cir. 2016) ................................................................................13

*Healy v. Beer Inst.*,
    491 U.S. 324 (1989).....................................................................................................15

*Hendrix ex rel. United States v. J-M Mfg. Co.*,
    76 F.4th 1164 (9th Cir. 2023) .....................................................................................10

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ......................................................................................4

*Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*,
    162 Wn.2d 59 (2007) ...................................................................................................11

*Integra Med Analytics LLC v. Providence Health & Servs.*,
    854 F. App'x 840 (9th Cir. 2021) .................................................................................5

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
    998 F.3d 397 (9th Cir. 2021) ......................................................................................12

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
    2009 WL 10676391 (W.D. Wash. May 27, 2009)..................................................9, 11

*Johnson v. U.S.*,
    576 U.S. 591 (2015).....................................................................................................13

*Joseph v. Amazon.com, Inc.*,
    46 F. Supp. 3d 1095 (W.D. Wash. 2014)....................................................................13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ......................................................................................4

*King v. Amazon.com Servs. LLC*,
    2026 WL 628261 (W.D. Wash. Mar. 6, 2026) ...........................................................19

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

iii

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

*Kleffman v. Vonage Holdings Corp.*,
  2007 WL 1518650 (C.D. Cal. 2007)........................................................................................9

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .................................................................................................3

*M.G. v. Bainbridge Island Sch. Dist. #303*,
  34 Wn. App. 2d 51, 78................................................................................................10, 11

*Malibu Media, LLC v. Doe*,
  2014 WL 2615351 (S.D. Fla. May 21, 2014) ........................................................................7

*Martin v. Miller*,
  24 Wn. App. 306 (1979) ......................................................................................................10

*Montes v. SPARC Grp. LLC*,
  No. 104162-4, 2026 WL 900481 (Wash., Apr. 2, 2026) ................................................18, 19

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) .................................................................................................5

*Mostowfi v. i2 Telecom Int'l, Inc.*,
  269 Fed. Appx. 621 (9th Cir. 2008)......................................................................................12

*Nat'l Collegiate Athletic Ass'n v. Miller*,
  10 F.3d 633 (9th Cir. 1993) .................................................................................................16

*nexTUNE, Inc. v. McKinney*,
  2013 WL 2403243 (W.D. Wash. May 31, 2013)..................................................................4, 7

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
  469 F.3d 348 (4th Cir. 2006) ..............................................................................................8, 9

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970)..............................................................................................................14

*Prudencio v. Midway Importing, Inc.*,
  831 F. App'x 808 (9th Cir. 2020) ......................................................................................5, 12

*Publius v. Boyer-Vine*,
  237 F. Supp. 3d 997 (E.D. Cal. 2017)...................................................................................15

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015) .................................................................................15, 16, 17

*Six Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) .............................................................................................14

*SpoofCard, LLC v. Burgum*,
  499 F. Supp. 3d 647 (D.N.D. 2020)......................................................................................15

*SpotterRF LLC v. Knoch*,
  2025 WL 1530305 (W.D. Wash. May 29, 2025).....................................................................7

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ...............................................................................................4

*State v. Heckel*,
  143 Wn.2d 824, 24 P.3d 404 (2001).....................................................................................17

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ...............................................................................................12

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

*TelTech Sys., Inc. v. McCollum*,
2009 WL 10626585 (S.D. Fla. July 16, 2009)..........................................................................15

*TelTech Systems, Inc. v. Barbour*,
866 F. Supp. 2d 571 (S.D. Miss. 2011)....................................................................................15

*TXO Prod. Corp. v. Alliance Resources Corp.*,
509 U.S. 443 (1993).................................................................................................................13

*United States v. Carter*,
549 F. Supp. 2d 1257 (D. Nev. 2008) .......................................................................................7

*Valley Bank of Nev. v. Plus Sys., Inc.*,
914 F.2d 1186 (9th Cir. 1990) .................................................................................................15

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) .........................................................................................2, 13, 14

*Water & Sanitation Health, Inc. v. Rainforest All., Inc.*,
2015 WL 12657110 (W.D. Wash. Dec. 29, 2015) ..................................................................12

*Westcott v. Wells Fargo Bank, N.A.*,
862 F. Supp. 2d 1111 (W.D. Wash. 2012)...............................................................................10

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ...................................................................................................4

*Wright v. Lyft*,
189 Wn. 2d 718 (2017) .............................................................................................................19

**STATUTES**

15 U.S.C. § 7701(a)(8)...................................................................................................................9

15 U.S.C. § 7701(a)(11).................................................................................................................8

15 U.S.C. § 7707(b)(1) ......................................................................................................2, 9, 13

RCW 19.86.020 ..............................................................................................................................1

RCW 19.190.020(1)......................................................................................................................17

RCW 19.190.020(1)(b) .................................................................................................1, 4, 7, 16

RCW 19.190.020(2)......................................................................................................................17

RCW 19.190.030(1)(b) ..................................................................................................................9

**OTHER AUTHORITIES**

https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Bills/Session%20Laws/House/2274-
S.SL.pdf (last visited April 6, 2026)........................................................................................18

Restatement (Second) of Torts § 525............................................................................................9

U.S. Const. ...............................................................................................................................8, 17

**RULES**

Fed. R. Civ. P. 9(b) ..........................................................................................................2, 4, 12, 13

Fed. R. Civ. P. 12(b)(6)........................................................................................................... passim

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

v

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

Defendant Destination XL Group, Inc. d/b/a DXL Big + Tall ("DXL") hereby respectfully moves to dismiss Plaintiffs' putative class action Complaint (*see* Dkt. 1-1), in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6). In support thereof, DXL provides the following grounds.

### INTRODUCTION

Every day, customers of DXL (and countless other websites) sign up to receive promotional emails for discounts. Many, if not most, of these emails are never read, relied upon, or even noticed. Sometimes, the emails include notices of short term sales, like over a holiday weekend. Sometimes, if the customer demand is great for instance, the sales may be extended for a short period. Plaintiffs in this case seek to recover $500 for similar emails they signed up to receive from DXL, because they claim that DXL's email subject lines were somehow "misleading." These allegations fail.

Indeed, in their two-count Complaint, July Dodson, Tenadore Fowler, and Ryan Tamm (collectively, "Plaintiffs") allege they received supposedly "false or misleading" emails from or on behalf of DXL regarding "limited time" sales offers, in purported violation of the Washington Consumer Electronic Mail Act ("CEMA"), RCW 19.190.020(1)(b), and the Consumer Protection Act ("CPA"), RCW 19.86.020. Notably, however, Plaintiffs do not allege they were harmed in any way by these communications—which are exceedingly commonplace in the retail industry and are not remotely false or misleading—or that they have suffered any economic damages entitling them to compensatory relief as a consequence. They also do not allege they ever purchased anything from DXL or that the subject emails influenced any of their purchase decisions. Despite all this, Plaintiffs seek millions in statutory damages and to represent a putative class of Washington residents "estimated to minimally contain thousands of members" based solely on a theory of strict liability. As discussed below, Plaintiffs' claims are ripe for dismissal in their entirety on multiple levels:

**First**, Plaintiffs fail to plausibly allege that DXL violated the CEMA. To state such a claim, Plaintiffs must plead sufficient non-conclusory facts, in accordance with bedrock federal pleading standards, regarding *inter alia* (1) a false or misleading statement in the subject line of an email that they received; and (2) said email was sent to an email address that the sender knew or had reason to know was "held by a Washington resident." RCW 19.190.020(1)(b). Plaintiffs fail on both fronts.

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW
- 1 -
MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

**Second**, even if Plaintiffs had properly pled facts supporting the *prima facie* elements of a CEMA claim (which they did not), their CEMA claims fail for several more reasons. For one, CEMA is expressly preempted by the federal CAN-SPAM Act, which explicitly "regulates the use of electronic mail to send commercial messages" and therefore preempts state statutes like CEMA that do the same. 15 U.S.C. § 7707(b)(1). CAN-SPAM does carve out an exception for state laws that "govern the use of commercial email by prohibiting fraud or deception" under traditional common law tort theories. 15 U.S.C. § 7707(b)(1); *see also Gordon v. Virtumundo, Inc.,* 575 F.3d 1040, 1061 (9th Cir. 2009) ("[T]he express language of § 7707(b) demonstrates Congress's intent that the CAN–SPAM Act broadly preempts state regulation of commercial e-mail with limited, narrow exception."). Here, however, Plaintiffs' claims do not fall into the category of fraud or deception, and they allege no facts supporting the elements of such a traditional tort claim. Moreover, it is axiomatic that fraud claims must be pleaded with particularity pursuant to Fed. R. Civ. P. 9(b), which the Complaint fails to do. Therefore, Plaintiffs' CEMA claims are preempted by CAN-SPAM.

**Third**, even if CEMA was not preempted by CAN-SPAM, it is unconstitutional. On the one hand, the statutory damages imposed by CEMA are unconstitutionally punitive, in violation of the Due Process Clause of the U.S. Constitution. As the Ninth Circuit has held, due process concerns are heightened when statutory damages are awarded for strict liability where, as here, the plaintiffs have suffered no quantifiable damages. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1120 (9th Cir. 2022). In this case, Plaintiffs seek potentially millions of dollars in statutory damages with no allegations of any harm based only on a theory of strict liability. This is a violation of the Due Process Clause because the ratio of low harm to high liability is grossly disproportionate.

On the other, CEMA also violates the Constitution's "dormant" Commerce Clause. In this regard, CEMA burdensomely applies to emails sent out-of-state to addresses held by Washington residents regardless of whether the recipient is located outside of Washington at the time of receipt. This forces companies to follow a *de facto* nationwide standard for emails using common marketing practices. CEMA also directly regulates transactions occurring wholly outside of this State, in that an out-of-state company could email a Washington resident who is not actually in state at the time.

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW
- 2 -
MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

CEMA also raises First Amendment concerns because it chills common, non-misleading, and perfectly legal commercial speech, which employs standard marketing practices, by imposing heavy statutory penalties without requiring any showing of materiality, reliance, or actual harm.

**Lastly**, since Plaintiffs' CPA claim in Count II of the Complaint is entirely premised on their faulty CEMA claim in Count I, it naturally fails and must be dismissed, as well. And as shown below, Plaintiffs also fail to plead sufficient facts supporting the *prima facie* elements of a CPA claim.

<b><u>RELEVANT ALLEGATIONS</u></b>

In pertinent part, Plaintiffs allege that they received emails from or on behalf of DXL with subject lines that created a "false sense of urgency" and included "false time scarcity" claims. Dkt. 1-1, ¶¶ 4, 5, 31, 46-84. They do not, however, indicate which Plaintiff received which email. In any event, Plaintiffs speculate that these emails *can* change the purchasing behavior of *some* customers, but no Plaintiff alleges that *they* changed their behavior because such an email. *Id*. ¶¶ 35-40. Rather, they claim DXL deceives customers by announcing promotional pricing, presenting the promotion as scarce or time-limited, and then extending it to a new date after the advertised deadline has passed. *Id*. ¶ 44. Plaintiffs provide examples of emails (albeit excerpts only) extending promotions and allege these extensions make emails sent prior to the extensions false or misleading. *Id*. ¶¶ 46-84.

Plaintiffs speculate that DXL knows when it sends emails to Washington residents because it is "[a] sophisticated commercial enterprise" and, among other things, could have tracked IP addresses or used "sophisticated marketing and analytics platforms." *Id*. ¶¶ 86-94.

In all, Plaintiffs allege two claims: a violation of CEMA (Count I) and violation of the CPA (Count II). *Id*. ¶¶ 121-37. Plaintiffs do not claim actual damages and instead request statutory damages of $500 per alleged violation. *Id*. ¶ 137. They also seek class treatment. *See id*. ¶ 110.

<b><u>APPLICABLE LEGAL STANDARDS</u></b>

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim for relief. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court takes "all factual allegations set forth in the complaint . . . as true and construed in the light most favorable to plaintiffs." *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, only well-pleaded facts are given

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 3 -

a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (internal quotations omitted). A "formulaic recitation of the elements" of a claim is likewise insufficient, *Iqbal*, 556 U.S. at 678, and conclusory allegations that "simply recite the elements of a cause of action" without supplying underlying facts to support those elements are not "entitled to the presumption of truth." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In short, under Rule 12(b)(6), this Court need <u>not</u> accept as true any allegations in Plaintiffs' Complaint "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012); *see also nexTUNE, Inc. v. McKinney*, 2013 WL 2403243, at *4 (W.D. Wash. May 31, 2013) ("[S]peculation unsupported by any factual allegation is insufficient to survive a motion to dismiss under 12(b)(6).") (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). Rather, to survive dismissal in this instance, Plaintiffs must plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678. *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (Under Rule 9(b), a "party alleging fraud must set forth more than the neutral facts necessary to identify the transaction.").

## ARGUMENT

### I.    PLAINTIFFS DO NOT PLAUSIBLY ALLEGE A CEMA VIOLATION.

Plaintiffs' CEMA claim in Count I fails because Plaintiffs do not plausibly allege that (i) DXL made any false or misleading statements in the subject lines of emails they received or (ii) DXL knew or had any reason to know whether the subject emails were sent to Washington residents.

### A.    Plaintiffs Do Not Plausibly Allege Any False or Misleading Statements.

Again, CEMA requires a false or misleading statement in an email's subject line for a violation. *See* RCW 19.190.020(1)(b). Along those lines, Plaintiffs allege here, at best, that DXL's emails are misleading because they supposedly create a false sense of urgency when they state a sale is expiring but the sale is subsequently extended or renewed. *See* Dkt. 1-1, ¶¶ 4, 5, 31, 46-84. If DXL made a business decision to initiate a new sale, or extend a current sale, those initial emails

DEFENDANT'S MOTION TO DISMISS                    - 4 -
CASE NO. 2:26-CV-00866-JNW

"do not communicate information that retroactively becomes false (and actionable) under CEMA because market conditions change such that a better sale is later available." *Brown v. Old Navy, LLC*, 4 Wash. 3d 580, 595 (2025) (*en banc*). In other words, allegations that emails extending a promotion retroactively, making prior emails about the promotion supposedly false or misleading, are not actionable under CEMA. *Id*. That is really all Plaintiffs are alleging occurred in this case, at most.

Moreover, Plaintiffs conclude that DXL's "deceptive strategy" is that it "announces promotional pricing, demanding consumers' attention by presenting that pricing as a scarce or time-limited opportunity" and then "[o]nce the advertised deadline has passed, DXL purports to extend the promotion to a new end date." Dkt. 1-1, ¶ 44. However, Plaintiffs do not plausibly allege that the duration of any sale in these emails was predetermined (such as, for example, that DXL had already planned in advance to later extend the sale period); and their allegations do not preclude the plausible alternative explanation that DXL extended the relevant sales in response to subsequently developed business conditions, which is an exceedingly common practice in the retail industry.

In this regard, it is well-settled that, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Prudencio v. Midway Importing, Inc*., 831 F.App'x 808, 810 (9th Cir. 2020) (citation omitted, cleaned up). Moreover, this Court "need not accept the conclusion that [DXL] engaged in unlawful conduct when its actions are in line with lawful 'rational and competitive business strategy.'" *Integra Med Analytics LLC v. Providence Health & Servs*., 854 F.App'x 840, 845 (9th Cir. 2021) (dismissing because plaintiff failed to allege facts excluding a competing explanation) (quoting *Twombly*, 550 U.S. at 554). *See also Moss v. U.S. Secret Serv.,* 572 F.3d 962, 970 (9th Cir. 2009) (rejecting allegations as "merely possible" to support "impermissible motive"). The Court may instead rely on its "judicial experience and common sense" to conclude that a business like DXL has performance targets and takes reasonable steps to reach those targets, including by extending sales that do not perform as anticipated, or that the sales at issue were merely extended to the benefit of DXL's customers because of consumer demand. *See Eclectic Props. E.,*

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 5 -

*LLC v. Marcus & Millichap Co.,* 751 F.3d 990, 998–99 (9th Cir. 2014) (citing *Iqbal*). Because Plaintiffs' allegations regarding the challenged emails here "do[] not tend to exclude a plausible and innocuous alternative explanation," *id*. at 998, the Court should dismiss their CEMA claims.[1]

Further, some of the complained-of emails included in the Complaint are objectively not misleading or false on their face. For example, Plaintiffs allege emails such as "Final Call! Up to 50% Off Clearance", "In a Few Hours, Up to 50% Off Will be 100% Gone", "Final Hours for BOGO FREE Deals", and "Cyber Monday Deals Ending! 10%, 20%, 30% OFF" are false or misleading. *See* Dkt. 1-1, Exhibit A. These alleged emails do not include a definite timeline of when the sale would end and thus cannot be false or misleading, even if sales were later extended for any reason.[2]

Plaintiffs also allege that an email announcing a "Cyber Monday" promotion would end that night was false or misleading because the next day an email was sent saying "It's Cyber Tuesday! 20% Off Savings Extended!" Dkt. 1-1, ¶¶ 79-81. However, these are two different promotions, so neither email is false. In another example, Plaintiffs claim an email was sent saying "Everything Online & In-Store- 30% OFF! Ends Today!" was misleading because the next day an email was sent saying "Extended! 30% OFF Everything! Online Only!" *Id*., ¶¶ 83-84. These are also different savings events. One promotion was for both store and online purchases whereas the other was only for online purchases. In short, Plaintiffs did not plausibly allege falsity or misrepresentations here.

For any or all these reasons, therefore, Count I should be dismissed under Rule 12(b)(6).

**B.      Plaintiffs Do Not Plausibly Allege DXL Knew or Had Any Reason to Know that the Subject Emails were Sent to Emails Held By Washington Residents.**

Plaintiffs' "[g]eneralized assertions that a [defendant] had access to [ ] aggregate information and data" are speculative and not enough to establish DXL knew or should have known whether an

---

[1] At best, the Complaint notes that, as to one email dated "October 10, 2024, DXL *knew* that the deal would not end on October 14" as stated in body of the email (not the subject line) because there was "fine print at the very bottom" of the same email stating "'Offer valid thru 10/20/2024.'" Dkt. 1-1, ¶ 57 (emphasis original). However, CEMA does not cover technical errors, which perhaps is at most what occurred in that one limited instance. *See Brown*, 4 Wash. 3d at 595.

[2] Demonstrative of the Complaint's many facial pleading deficiencies, Plaintiffs do not allege which emails they each allegedly received, and instead their allegations are lumped together.

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW                    - 6 -                    MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

email address was held by a Washington resident. *Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 772–73 (N.D. Cal. Sept. 9, 2024) (quoting *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012)); *see also SpotterRF LLC v. Knoch*, 2025 WL 1530305, at *21 (W.D. Wash. May 29, 2025) (dismissing where allegations defendant knew or had reason to know of a legal obligation were purely speculative). In this regard, Plaintiffs allege DXL has "several ways of knowing where the recipients of its marketing emails are located." Dkt. 1-1, ¶ 86. They conclude DXL knew or should have known their email addresses were held by Washington residents (see RCW 19.190.020(1)(b)) include *inter alia* (1) the sheer amount of emails sent put DXL on notice they could be sent to Washington residents; (2) DXL could obtain location information when customers make purchases through its digital platforms; (3) DXL could track the IP addresses of devices used to open emails; (4) DXL could use "sophisticated marketing and analytics platforms"; (5) DXL could purchase consumer data; (6) DXL could use "identity resolution services"; and (7) DXL could ask the registrant of internet domain names contained in recipients' email addresses. *Id.*, ¶¶ 87-94.

All this is pure speculation, however. The Complaint does not include what method, if any, DXL actually uses and instead merely asserts generalized speculation that DXL **could** have access to data through the methods Plaintiffs proposed.[3] This Court need not treat these allegations as true under Rule 12(b)(6). *See nexTUNE, Inc.*, 2013 WL 2403243, at *4. Moreover, an IP address is not a good proxy for residency; indeed, an individual could be traveling to Washington when they check an email or access the website. Nor is it reasonable to ask senders to use IP addresses to attempt to determine the residency of a recipient of an email. *See, e.g., Gutierrez,* 2024 WL 2106952, at *17 ("Plaintiff concedes that Defendant is not in a position to make the legal determination of residency

---

[3] Myriad courts have cast serious doubt on the reliability of using IP addresses for geolocation purposes. *See, e.g., Gutierrez v. Converse Inc.*, 2024 WL 2106952, at *17 (C.D. Cal. May 2, 2024) ("The fact that Defendant may have access to chat users' IP addresses and certain chat users' shipping addresses does not mean that they are in a position to make a determination as to where the chat users were located when they used the chat feature."); *United States v. Carter,* 549 F. Supp. 2d 1257, 1262 (D. Nev. 2008) (acknowledging IP addresses can be spoofed, shared, or associated with multiple devices, complicating their use as evidence of the user's definitive location); *Malibu Media, LLC v. Doe*, 2014 WL 2615351, at *2 (S.D. Fla. May 21, 2014) (declining to rely solely on assertions that jurisdiction and venue were appropriate based on a geolocation of the defendant's IP address, and ordering plaintiff to show cause why such reliance might be appropriate).

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW
- 7 -
MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

with respect to chat users" even if Defendant could rely on IP addresses to determine location.). In sum, the "knowledge" prong of CEMA is improperly pled, which is further fatal to the Count I.

## II.    THE FEDERAL CAN-SPAM ACT PREEMPTS PLAINTIFFS' STATE LAW CEMA CLAIMS AND FURTHER REQUIRES DISMISSAL.

The Supremacy Clause of the Constitution provides that the laws of the United States are "the supreme Law of the Land" and thus state laws conflicting with federal laws are unconstitutional. U.S. Const. art. VI, cl. 2. *See also Altria Group, Inc. v. Good,* 555 U.S. 70, 76 (2008) (per the Supremacy Clause, "state laws that conflict with federal law are without effect").

The Ninth Circuit has held that CAN-SPAM Act preempts CEMA. *See Virtumundo,* 575 F.3d at 1059–64 (finding that CAN-SPAM preempted plaintiff's CEMA claim as to deceptive "from lines" on emails); *see also Gordon v. First Premier Bank, Inc.,* 2009 WL 5195897, at *1–2 (E.D. Wash. Dec. 21, 2009) (applying *Virtumundo,* and dismissing CEMA claim with prejudice on this basis). When Congress passed CAN-SPAM, it intended to establish uniform national standards for governing commercial emails out of a concern with the complexity and burden of complying with a patchwork of conflicting state laws, including CEMA. *See* 15 U.S.C. § 7701(a)(11). In enacting CAN-SPAM, therefore, Congress struck a "careful balance between preserving a potentially useful commercial tool and preventing its abuse." *Omega World Travel, Inc. v. Mummagraphics, Inc.,* 469 F.3d 348, 354 (4th Cir. 2006); *see also Virtumundo,* 575 F.3d at 1049 (discussing that the purpose of CAN-SPAM was not to stamp marketing emails out of existence, as Congress recognized "there are beneficial aspects to commercial e-mail, even bulk messaging, that Congress wanted to preserve, if not promote"). Indeed, in the statute itself, Congress stated that:

> Many States have enacted legislation intended to regulate or reduce unsolicited commercial electronic mail, but these statutes impose different standards and requirements. As a result, they do not appear to have been successful in addressing the problems associated with unsolicited commercial electronic mail, in part because since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know which of these disparate statutes they are required to comply.

15 U.S.C. § 7701(a)(11). Thus, CAN-SPAM regulates commercial email subject lines, just like CEMA does, by prohibiting deceptive subject lines that "would be likely to mislead a recipient,

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 8 -

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." 15 U.S.C. § 7701(a)(8); *id.* § 7704(a)(2). But critically, unlike CEMA, "the CAN-SPAM Act prohibits only deceptive subject line headings or ***materially*** false or ***materially*** misleading header information." *Virtumundo*, 575 F.3d at 1062 (emphasis in original). Because CEMA prohibits a broad range of email subject lines—including those with merely "***misleading***" information, RCW 19.190.030(1)(b) (emphasis added)—it goes further than CAN-SPAM allows.

That said, CAN-SPAM carves out a narrow preemption exception, which states that it supersedes any State statute that "expressly regulates the use of electronic mail to send commercial messages, ***except to the extent*** that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." *Id.* § 7707(b)(1) (emphasis added). The Ninth Circuit recognized this narrow exception in *Virtumundo*, holding that this exception refers to "'traditionally tortious or wrongful conduct.'" 575 F.3d at 1062 (quoting *Omega*).[4] In so ruling, the court reasoned that limiting the narrow preemption exception to "tortious or wrongful conduct" comported with CAN-SPAM's prohibition on materially misleading or fraudulent communications. *Id*. at 1059. And, because CAN-SPAM imposes a national standard for regulating commercial email speech, the court held that the states are limited to prohibiting the same behavior. *Id*. The court concluded that it would be "incongruous" to permit states to "create more burdensome" standards than those under CAN-SPAM. *Id*. at 1063. In fact, the court held such

---

[4] In other words, the only state law claims that can survive CAN-SPAM preemption are those that contain the traditional elements of common law fraud and deceit: e.g., materiality, reliance, actual injury, and deceptive intent. *See Omega*, 469 F.3d at 354 (citing Prosser and Keeton on the Law of Torts § 105, at 726–27 (5th ed. 1984) and Restatement (Second) of Torts § 525). *See also Virtumundo*, 575 F.3d at 1061-62 (citing *Omega* with approval and discussing materiality component, noting "Congress did not intend that states retain unfettered freedom to create liability for immaterial inaccuracies"). Indeed, CEMA's central purpose was to address the "concern[] about the added cost consumers faced" in 1998 from searching through emails in an era with slow internet and, thus, "sought to give consumers relief from commercial spam e-mail[.]" *Brown*, 4 Wash. 3d at 583, 590. Therefore, CEMA's purpose was ***not*** to remedy intentional torts such as fraud or deception. *See Isomedia, Inc. v. Spectrum Direct, Inc.,* 2009 WL 10676391, at *3 (W.D. Wash. May 27, 2009) (finding CEMA does not require "the elements of common law fraud"). *See also Kleffman v. Vonage Holdings Corp.,* 2007 WL 1518650, at *2–3 (C.D. Cal. 2007) (finding anti-spam claims were "clearly preempted" because CAN-SPAM "left states room only to extend their *traditional* fraud prohibitions to the realm of commercial emails" and the plaintiff did not "allege a traditional tort theory at all, or even that he was at any point misle[]d by any of the … emails") (emphasis original).

---

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 9 -

a scheme would "undermine the regulatory balance" CAN-SPAM establishes and "once again subject legitimate businesses to inconsistent and possibly incompatible state regulations." *Id*.

Under this framework, therefore, the *Virtumundo* court held CEMA's plain language oversteps into preempted territory by prohibiting "a vast array of non-deceptive acts and practices." *Id*. at 1059. In particular, the court identified as preempted CEMA's prohibitions on unintentional or immaterial misstatements and "imperfect representations." *Id*. The court accordingly found the plaintiff's claims at bar as not actionable. *Id*. at 1064. It reasoned the plaintiff admitted "he was not in any way misled or deceived," but claimed the defendants were liable under CEMA because the emails contained inaccurate statements. *Id*. at 1063. Nor did he identify how the alleged misstatements were material or intentionally misleading. *Id*. at 1064. At bottom, the court viewed the plaintiff's allegations as preempted strict liability claims for failing to comply with "a heightened content or labelling requirement." *Id*. Hence, the plaintiff's claims were not "traditionally tortious" and, regardless of whether those claims might technically be "actionable under CEMA, such state law claims falter under the weight of federal preemption." *Id*. at 1062, 1064. All this rings true here.

In this case, DXL's email subject lines do not involve tortious or wrongful conduct and Plaintiffs do not even attempt to establish a claim based on traditional tortious theories. Indeed, fraud requires pleading facts supporting the following elements: (1) a material misrepresentation; (2) reliance; (3) actual injury; and (4) deceptive intent. *See, e.g., Westcott v. Wells Fargo Bank, N.A.*, 862 F. Supp. 2d 1111, 1117 (W.D. Wash. 2012). *See also M.G. v. Bainbridge Island Sch. Dist. #303*, 34 Wn. App. 2d 51, 78 n.23 (2025) (listing nine elements of fraud). Without such facts, Plaintiffs cannot establish their claims fall under CAN-SPAM's purposefully narrow preemption exception.

In fact, Plaintiffs do not allege any material misrepresentation, as required to establish a *prima facie* fraud claim. *See Virtumundo*, 575 F.3d at 1062. *See also Hendrix ex rel. United States v. J-M Mfg. Co.,* 76 F.4th 1164, 1169 (9th Cir. 2023) (focusing on whether the alleged misstatement was "material to [the plaintiff's] decision-making"); *Martin v. Miller,* 24 Wn. App. 306, 309 (1979) (ruling similarly); *Elcon Constr., Inc. v. E. Wash. Univ.,* 174 Wn.2d 157, 167–68 (2012) (recognizing that a claim for fraud or deceit requires an allegation of "material" falsehood). In this case, Plaintiffs'

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 10 -

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

primary allegation against DXL is that the subject emails created a "false sense of urgency." Dkt. 1-1, ¶ 4. Yet, Plaintiffs tellingly do not allege that any supposed misrepresentation in these emails was material in *their* purchasing decisions. In fact, they never allege that any Plaintiff made a purchase from DXL at all, let alone did so because of these emails. Plainly, these alleged emails were immaterial to them by any definition. *See also Brummett v. Wash.'s Lottery,* 171 Wn. App. 664, 678 (2012) (ad claiming tickets were "going fast" was not "something of material importance").

Plaintiffs also do not allege any reliance, either. Again, they do not claim they made a purchase from DXL during any promotional period or were induced by an email to make a purchase they would not have otherwise made. Plaintiffs only allege they received an email, which "is not the same as an allegation that anyone acted in reliance upon the information contained in it." *Isomedia*, 2009 WL 10676391, at *4. *See also BP W. Coast Prods., LLC v. Shalabi*, 2012 WL 2277843, at *5 (W.D. Wash. June 14, 2012) (dismissing fraud claims where plaintiff could not allege reliance element); *Great Pac. Sec. v. Barclays Cap., Inc.,* 743 F. App'x 780, 783 (9th Cir. 2018) (affirming dismissal of fraud claim that "fail[ed] to plead whether anyone at Great Pacific read the [the challenged representations] or how Great Pacific personnel relied on the [the representations]").

Plaintiffs also do not allege they suffered any injury. *See Virtumundo,* 575 F.3d at 1066 (holding that, to state a fraud claim "[a] plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury") (citing *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.,* 162 Wn.2d 59, 84 (2007)). Here, Plaintiffs do not allege that they sustained any injury whatsoever, much less that there was any causal link between the subject emails and their purported injuries. Instead, Plaintiffs seek statutory damages on a strict liability theory. Such a theory of liability is in direct contrast with the CAN-SPAM's exemption clause, which only saves traditional tort claims sounding in fraud or deceit. Without an allegation of harm or causation, Plaintiff's claim is facially deficient for this reason too.

Plaintiffs also fail to adequately plead deceptive intent. In other words, nowhere do Plaintiffs plausibly allege DXL actually knew that the subject lines of the emails listed in the Complaint were "misleading" on the dates they were sent – *i.e.*, that DXL had "knowledge of its falsity." *M.G. v.*

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 11 -

*Bainbridge Island Sch. Dist. #303,* 34 Wn. App. 2d at 78 n.23 (elements of fraud). Nor can they allege this. DXL could have chosen to extend the promotions after sending the original emails stating the end of that promotion, which is common place when there is significant consumer response to a sale (its beneficial to the consumer). At bottom, Plaintiffs merely contend a sale occurred, it was for a limited time, it was possibly extended for another limited time, and it ended. But their Complaint provides no reasonable factual basis for this Court to infer that the subject emails were knowingly false or misleading when they were sent. Nevertheless, it bears repeating that, "[w]hen faced with 'two possible explanations, only one of which can be true and only one of which results in liability . . . [s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiff's allegations plausible.'" *Prudencio,* 831 F. App'x at 810 (dismissing complaint because plaintiff failed to allege facts which excluded a competing explanation). The omission of such factual enhancement is further fatal to their claim.

Moreover, it is well-established Rule 9(b) imposes heightened requirements for claims alleging fraud or misrepresentation and requires fraud to be pled with particularity. *See Kearns, supra*; *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007); *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 404 (9th Cir. 2021). *See also Water & Sanitation Health, Inc. v. Rainforest All., Inc.*, 2015 WL 12657110, at *3 (W.D. Wash. Dec. 29, 2015) (applying Rule 9(b) to fraud-based CPA claim and dismissing where allegations lacked "sufficient specificity"). To meet this standard, the Complaint must include "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004). Accordingly, the allegations must be specific enough to put DXL on notice of which particular acts of misconduct constitute the fraud charge. *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001). Failing to meet this standard mandates dismissal. *See Mostowfi v. i2 Telecom Int'l, Inc.,* 269 Fed. Appx. 621, 623 (9th Cir. 2008).

As applied here, Plaintiffs do not come close to meeting the Rule 9(b) particularity requirement. Plaintiffs at best provided a random list of supposedly misleading email subject lines without specifically averring who wrote each email or when, how each was false or misleading, who

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW                - 12 -          MERRICK, HOFSTEDT & LINDSEY, P.S.
                                                                      ATTORNEYS AT LAW
                                                              3101 WESTERN AVENUE, SUITE 200
                                                                SEATTLE, WASHINGTON 98121
                                                                       (206) 682-0610

if anyone relied on the emails (or to their detriment), and how anyone was injured if at all beyond his or her mere receipt of an email. *See also Haskins v. Symantec Corp.*, 654 F.App'x 338, 339 (9th Cir. 2016) (holding plaintiff "failed to plead her fraud claims with particularity as required by Rule 9(b)" by not alleging detrimental reliance); *Great Pac. Sec.,* 743 F. App'x at 782 (finding complaint "failed to plead reliance with particularity"); *Joseph v. Amazon.com, Inc.,* 46 F. Supp. 3d 1095, 1109 (W.D. Wash. 2014) (granting defendant judgment on the pleadings because plaintiff failed to plead with sufficient particularity any "material representation to him that he had right to and did rely upon to his detriment"). In sum, Plaintiffs' hodgepodge of conclusory and unspecific allegations are woefully insufficient to put DXL on notice of potential conduct that would constitute fraud. Plaintiffs' Complaint therefore does not meet the fundamental specificity requirements of Rule 9(b), which is further evidence that CAN-SPAM preempts Plaintiffs' CEMA claims.[5]

In sum, Plaintiffs' CEMA claims fails to meet the "limited, narrow exception" to CAN-SPAM Act preemption for common-law claims of fraud or deceit. *See Virtumundo*, 575 F.3d at 1061; 15 U.S.C. § 7707(b)(1). The Court should dismiss the Count I, accordingly.

### III.   PLAINTIFFS' CEMA CLAIMS FAIL ON CONSTITUTIONAL GROUNDS.

Plaintiffs' CEMA claims fail on constitutional grounds for at least three separate reasons.

#### A.   CEMA Violates Due Process Because it is Excessively Punitive.

The U.S. Constitution's Fifth Amendment (applicable to the States vis-à-vis the Fourteenth Amendment) provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." *Johnson v. U.S.,* 576 U.S. 591, 595 (2015). In the present case, Plaintiffs' requests for statutory damages for alleged CEMA violations also violates the Due Process Clause, which *inter alia* "set[s] outer limits on the magnitude of damages awards." *Wakefield*, 51 F.4th at 1120.

The Due Process Clause restricts a State from imposing a "grossly excessive" punishment on an alleged tortfeasor. *TXO Prod. Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 454 (1993).

---

[5] *See also Dewar v. Smith,* 185 Wn. App. 544, 562 (2015) (outlining the elements of a common law negligent misrepresentation claim as including scienter, reasonable reliance, proximate causation, and damages). Plaintiffs do not plausbly allege such facts, either.

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

As the Ninth Circuit has explained, "constitutional due process concerns are heightened where, as here, statutory damages are awarded as a matter of strict liability when plaintiffs are unable to quantify any actual damages they have suffered." *Wakefield*, 51 F.4th at 1120 (citations omitted). The factors courts consider when determining excessiveness in the context of statutory damages are the degree of reprehensibility of the defendant's alleged conduct, the ratio between compensatory and punitive damages, and the difference between the damages and civil or criminal sanctions that could be imposed for similar conduct. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 575-85 (1996).

Here, CEMA imposes strict liability solely for receiving a potentially misleading or deceptive email without requiring any type of economic or material harm. Indeed, Plaintiffs have not alleged that they opened any of the subject emails from, or even read them prior to filing suit, relied on any email headings (let alone detrimentally), made a purchase that caused economic loss due to any emails, or suffered any actual harm entitling them to compensatory damages.

Moreover, DXL engaged in standard marketing practices which were far from reprehensible. Meanwhile, CEMA imposes statutory damages of $500 per email, and Plaintiffs here have identified 19 emails that they collectively (and wrongly) allege violated CEMA. This would entitle them and each class member to around $3,000, assuming that they received six violative emails each, that caused them no quantifiable damage. Plaintiff also allege there are potentially "thousands" of class members. *See* Dkt. 1-1 ¶ 114. Assuming this means a class of 2,000 members, Plaintiffs are seeking, at a minimum, $6 million dollars. This is grossly excessive. *See also Six Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301, 1309 (9th Cir. 1990) (considering $400 to $1600 per class member excessive even though class members sustained some actual damages for underpayment of wages). Penalizing DXL by making it pay millions of dollars in statutory damages where no actual injury exists is clearly disproportionate, grossly excessive, and thus a violation of the Due Process Clause.

**B.      CEMA Violates the Dormant Commerce Clause.**

A law may violate the dormant Commerce Clause if "it imposes a burden on interstate commerce 'clearly excessive in relation to the putative local benefits.'" *Conservation Force, Inc. v. Manning*, 301 F.3d 985, 995 (9th Cir. 2002) (quoting *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW                - 14 -        MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

(1970)). A law also violates the dormant Commerce Clause when it "directly controls commerce occurring wholly outside the boundaries of a State." *Healy v. Beer Inst*., 491 U.S. 324, 336 (1989). *See also Sam Francis Found. v. Christies, Inc.,* 784 F.3d 1320, 1323 (9th Cir. 2015). As to the latter, "[d]irect regulation occurs when a state law directly affects transactions that take place ... entirely outside of the state's borders." *Valley Bank of Nev. v. Plus Sys., Inc.,* 914 F.2d 1186, 1189–90 (9th Cir. 1990) (cleaned up). Such a statute is "invalid per se." *Id*. In other words, "[s]tatutes that have the practical effect of controlling conduct beyond the boundaries of the state [like the CEMA] are 'invalid regardless of whether the statute's extraterritorial reach was intended by the legislature.'" *TelTech Sys., Inc. v. McCollum*, 2009 WL 10626585, at *8 (S.D. Fla. July 16, 2009) (citing *Healy*).

*McCollum* is instructive here. There, a Florida statute prohibiting persons from causing false caller ID information to be displayed to call recipients "had the practical effect of regulating commerce that occur[red] wholly outside the state of Florida" and thus violated the Commerce Clause because it "[wa]s impossible for [callers] to determine whether the recipient of a call [wa]s in Florida"; therefore, "[t]he logical consequence of this impossibility [wa]s that [the callers] [we]re unable to offer Caller ID spoofing services anywhere in the country without risking criminal liability under Florida's statute." *Id*. at *8. Other courts have ruled similarly for analogous statutes. *See, e.g., Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14-16 (W.D. Wash. Mar. 30, 2015) (declining to certify class for Washington telemarketing statute on this basis because "the fact that a number with a Washington State area code was dialed does not necessarily mean that the call was received in Washington State"); *SpoofCard, LLC v. Burgum*, 499 F. Supp. 3d 647, 656 (D.N.D. 2020) (finding state calling statute "effectively regulate[d] how [p]laintiffs engage in their interstate commerce" in violation of the Commerce Clause because it was impossible to determine the call recipient's location; thus, "[p]laintiffs must either conduct all of their business in a certain way to avoid liability in North Dakota or, more likely, cease spoofing altogether"); *TelTech Systems, Inc. v. Barbour,* 866 F. Supp. 2d 571, 576-577 (S.D. Miss. 2011) (ruling similarly for Mississippi statute) (applying *McCollum*); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1025 (E.D. Cal. 2017) (noting plaintiffs were likely to win Commerce Clause challenge over California statue prohibiting out-of-state parties "from transferring

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 15 -

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

the specified information to any other entity, 'through any medium,' even if Hoskins and the recipient have no connection to California or the transfer 'takes place wholly outside of the State's borders.'").

In this case, CEMA violates the dormant Commerce Clause because it broadly applies to emails sent from outside Washington state to any email address "held by a Washington resident" (RCW 19.190.020(1)(b)) regardless of whether the recipient is located outside of Washington at the time of receipt—as such, anyone in the U.S. with an email address could possibly be a Washington resident with a claim. This, in turn, forces companies like DXL to follow a *de facto* nationwide standard for sending emails using common marketing practices. CEMA's broad extra-territorial reach makes it extraordinarily difficult for out-of-state entities like DXL to guarantee they are not sending emails to email addresses held by Washington residents,[6] and thus CEMA unconstitutionally burdens interstate commerce. *See Nat'l Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639–40 (9th Cir. 1993) (finding Nevada statute invalid under the dormant Commerce Clause as it effectively mandated Nevada's regulations nationwide and would subject the plaintiff to inconsistent legislation arising from the injection of Nevada's regulatory scheme into the jurisdiction of other states).

Additionally, in *Sam Francis*, the Ninth Circuit invalidated a California statute that relied on a residency hook in a failed attempt to circumvent the dormant Commerce Clause. The statute at issue in that case regulated sales where "the seller resides in California or the sale takes place in California." 784 F.3d at 1323 (cleaned up). Despite the residency limitation, the court determined that "the state statute facially regulates a commercial transaction that 'takes place wholly outside of the State's borders" in violation of the dormant Commerce Clause." *Id*. (citation omitted). Such is also true here. CEMA's spam provision purports to govern "commercial electronic mail message[s]

---

[6] Further, even if a company could know that an email address is held by a Washington resident, the company could never know whether the recipient received the email while in Washington or elsewhere. Moreover, the statute defines "reason to know" in such a broad and burdensome manner that, in practice, an out-of-state commercial entity must assume that CEMA's standards apply to every email it decides to send nationwide. By Plaintiffs' theory, out-of-state commercial email senders must *inter alia* contact the registrant of each domain name used for subscribing customers (which could number in the tens of thousands, if not more) and request information about their residency to identify email addresses potentially held by Washington residents. This is impractical, costly, and time consuming. And this is assuming the providers will even disclose this information.

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 16 -

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is **held by a Washington resident**" irrespective of whether the recipient is in Washington at the time the email is received. RCW 19.190.020(1) (emphasis added). In other words, it applies to emails that never cross into the State, if the email is "held by" a Washington resident. Here, Plaintiffs allege DXL maintains its principal place of business in Massachusetts. *See* Dkt. 1-1, ¶ 12. As such, a Massachusetts company could, for example, inadvertently unlawfully email an address held by a Washington resident under CEMA who is away at college in California (where such an email may not be unlawful), which is a transaction that takes place wholly outside this State.

Further compounding the defect here is that, under CEMA, residency is tied to whether "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address," which may have outdated or inaccurate residency information. *See* RCW 19.190.020(2). In such cases, CEMA purports to directly regulate, for example, the conduct of DXL sending commercial emails to California or other non-Washington residents who created an email address while attending college in Washington decades ago. Like in *Sam Francis*, "[t]he mere fact that some nexus to a state exists will not justify regulation of wholly out-of-state transactions." *Daniels Sharpsmart, Inc. v. Smith,* 889 F.3d 608, 615 (9th Cir. 2018).

In short, the Court should also rule that CEMA violates the dormant Commerce Clause.[7]

### C.      CEMA Violates the First Amendment.

The First Amendment to the Constitution protects "commercial speech from unwarranted governmental regulation." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 566 (1980). A First Amendment analysis of commercial speech restrictions requires that Courts examine the following: (1) whether the speech concerned a lawful activity and was not misleading; (2) "whether the asserted governmental interest to be served by the restriction on commercial speech

---

[7] The Washington Supreme Court's opinion in *State v. Heckel,* 143 Wn.2d 824, 24 P.3d 404 (2001), which predated the passage of CAN-SPAM, does not mandate another result. Although the *Heckel* court rejected a dormant Commerce Clause challenge to CEMA, this decision is not binding here, and federal courts are in the best position to analyze and interpret whether state laws conflict with the U.S. Constitution. Moreover, the *Heckel* court did not consider whether the statute sought to regulate conduct that takes place wholly outside of the State's borders. It does, as shown above.

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

is substantial"; and (3) "whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Id*. Here, enforcing Plaintiffs' CEMA claims would violate all three considerations and, thus, the First Amendment.

As discussed above, DXL's email subject lines were not false or misleading, and email marketing is a lawful activity. Further, Washington asserts an interest in preventing deceptive commercial practices and protecting consumers' interest in not receiving misleading communications. However, Plaintiffs are extending CEMA well beyond deception by applying it to statements that are immaterial, and at best amount to non-actionable puffery, by which no consumer could reasonably be misled. By eliminating any materiality or reliance requirement, CEMA does not meaningfully prevent deception and instead penalizes technical inaccuracies or puffery that do not result in consumer harm. Furthermore, CEMA is not narrowly tailored. It imposes $500 in possible statutory damages per message without any actual harm, simply because someone received an email. Less restrictive alternatives, such as requiring material deception, consumer reliance, or intent are readily available. In fact, perhaps tacitly recognizing this, the Washington legislature recently passed H.B. 2274 which recognizes the overreach and harshness of CEMA.[8] This becomes effective June 11, 2026, and among other things it adds a materiality requirement to CEMA and only allows for damage for a person who detrimentally relies on a subject line. Seeing that the Washington legislature itself is limiting CEMA, the current iteration clearly chills lawful speech and is more extensive than necessary. Therefore, the Court should dismiss the Complaint on this additional basis.

## IV. PLAINTIFFS' CPA CLAIMS ALSO FAIL.

Independently, Plaintiffs' CPA claims in Count II of the Complaint fail because they do not plausibly allege facts establishing the five "distinct elements" of a CPA claim, which are (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) which impacts the public interest; (4) an injury to the plaintiff's business or property; and (5) legal causation. *Montes v. SPARC Grp. LLC*, No. 104162-4, 2026 WL 900481, at *4 (Wash., Apr. 2, 2026) (citing *Hangman Ridge*

---

[8] *See* https://lawfilesext.leg.wa.gov/biennium/2025-26/Pdf/Bills/Session%20Laws/House/2274-S.SL.pdf (last visited April 6, 2026).

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 18 -

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

*Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986)). "If one element fails, the CPA claim as a whole fails." *King v. Amazon.com Servs. LLC*, 2026 WL 628261, at *4 (W.D. Wash. Mar. 6, 2026) (citing *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.,* 86 Wn. App. 732, 743 (1997)). Here, as discussed at length above, Plaintiffs do not plausibly allege the subject emails were "deceptive" or that they sustained any injury whatsoever (they did not make any purchases or relied on the emails), much less that there was any causal link between the subject emails and their purported injuries (if any). *See also Montes,* 2026 WL 900481, at *4 ("The term 'business or property' [in CPA] means injuries that are economic in nature.") (citing *Ambach v. French*, 167 Wash.2d 167, 172 (2009)). Thus, Plaintiffs fail to establish elements one, four, and five above.

Further, Plaintiffs rely on *Wright v. Lyft*, 189 Wn. 2d 718 (2017) to establish that a violation of CEMA is a *per se* violation of the CPA. *See* Dkt. 1-1, ¶ 131. But because Plaintiffs' CEMA claims in Count I fail for the reasons above, their CPA claims in Count II must be dismissed. In this regard, it is established that CPA claims predicated on CEMA claims fail as a matter of law if the CEMA claim fails. *See Virtumundo,* 575 F.3d at 1065.[9] As such is true here, Count II should be dismissed.

## V.  ANY DISMISSAL SHOULD BE WITH PREJUDICE.

Lastly, because the multiple constitutional defects as to their CEMA claims as identified above, are not curable by factual amendment, and since Plaintiffs plead no independent facts supporting the elements of their CPA claims. Plaintiffs' entire Complaint should be dismissed with prejudice. *See, e.g., Cervantes v. Countrywide Home Loans, Inc.,* 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that leave to amend may be denied where amendment would be futile); *Gabertan v. Walmart, Inc.*, 523 F. Supp. 3d 1254, 1257 (W.D. Wash. 2021) ("[W]here the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend.") (citing *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988)).

### CONCLUSION

For all the reasons above, Plaintiffs' Complaint should be dismissed with prejudice.

---

[9] *But see Gragg v. Orange Cab Co.,* 942 F. Supp. 2d 1111, 1117 (W.D. Wash. 2013) ("[A] violation of CEMA establishes only the CPA's first three elements."; thus, Plaintiffs must still allege injury.)

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 19 -

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

Dated: April 10, 2026,

*The undersigned certifies that this memorandum contains 7,927 words, excluding captions, tables of contents, tables of authorities, signature blocks, and certificates of service, in compliance with the Local Civil Rules, specifically LCR 7(d)(4) and LCR 7(e)(6). The undersigned further certifies that, per the Court's procedures, counsel for the parties met and conferred on April 7, 2026 prior to filing this motion and were unable to reach an agreement. Therefore, the motion is opposed.*

Respectfully submitted,

By: s/ *Rossi F. Maddalena*

   Rossi F. Maddalena, WSBA #39351
**MERRICK, HOFSTEDT & LINDSEY, P.S.**
3101 Western Avenue, Suite 200
Seattle, WA 98121
Tel. (206) 682-0610
Email: rmaddalena@mhlseattle.com


   John W. McGuinness (*pro hac vice* forthcoming)
   A. Paul Heeringa (*pro hac vice* forthcoming)
**MANATT, PHELPS & PHILLIPS, LLP**
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
JMcGuinness@manatt.com
PHeeringa@manatt.com

***Attorneys for Defendant***

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 20 -

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

## CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I served a true and correct copy of the foregoing document on the following parties by the method indicated below:

| ATTORNEY FOR PLAINTIFF: | |
|---|---|
| **ATTORNEY FOR PLAINTIFF:**<br><br>Samuel J. Strauss, WSBA No. #46971<br>Raina C. Borrelli*<br>**STRAUSS BORRELLI PLLC**<br>980 N. Michigan Avenue, Suite 1610<br>Chicago, IL 60611<br>Telephone: (872) 263-1100<br>Facsimile: (872) 263-1109<br>Email: sam@straussborrelli.com, raina@straussborrelli.com<br><br>Lynn A. Toops*<br>Natalie A. Lyons*<br>Ian R. Bensberg*<br>**COHENMALAD, LLP**<br>One Indiana Square, Suite 1400<br>Indianapolis, IN 46204<br>Tel.: (317) 636-6481<br>Email: ltoops@cohenmalad.com, nlyons@cohenmalad.com,<br>    ibensberg@cohenmalad.com<br><br>Gerard J. Stranch, IV*<br>Michael C. Tackeff*<br>Andrew K. Murray*<br>**STRANCH, JENNINGS & GARVEY, PLLC**<br>223 Rosa L. Parks Avenue, Suite 200<br>Nashville, TN 37203<br>Tel.: (615) 254-8801<br>Email: gstranch@stranchlaw.com, mtackeff@stranchlaw.com,<br>    amurray@stranchlaw.com<br>*Attorneys for Plaintiffs*<br>*PHV applications forthcoming | ☐ Legal Messenger<br>☐ Publication<br>☐ U.S. Mail<br>☒ E-Service<br>☒ E-mail |

DATED this 10th day of April, 2026, at Seattle, Washington

 */s/ Gloria Angelin*
Gloria Angelin, Legal Assistant
legalassistantii@mhlseattle.com

DEFENDANT'S MOTION TO DISMISS
CASE NO. 2:26-CV-00866-JNW

- 21 -

MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610