The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULY DODSON, TENADORE FOWLER, and RYAN TAMM, on their own behalf and on behalf of others similarly situated,

Plaintiffs,

and

STATE OF WASHINGTON,

Plaintiff-Intervenor,

v.

DESTINATION XL GROUP, INC. d/b/a DXL BIG + TALL,

Defendant.

NO. 2:26-cv-00866-JNW

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT DESTINATION XL GROUP, INC.'S MOTION TO DISMISS

Note for Motion Calendar:
May 8, 2026

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS (2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND ..................................................................................................... 2

III.  ARGUMENT .......................................................................................................... 3

    A.    CEMA Does Not Violate the Due Process Clause ....................................... 3

    B.    CEMA Does Not Violate the Dormant Commerce Clause ........................... 5

    C.    CEMA Does Not Violate the First Amendment .......................................... 10

    D.    CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject
       Lines ........................................................................................................... 11

        1.    CAN-SPAM exempts consumer protection statutes like CEMA .................... 11

        2.    A plaintiff need not plead common law tort elements to avoid preemption .... 13

IV.   CONCLUSION ..................................................................................................... 17

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - i
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## TABLE OF AUTHORITIES

### <u>Cases</u>

*Agnew v. Macys Retail Holdings LLC*,
No. 2:25-CV-02006-JHC, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026) ................. 1, 5, 16

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*,
107 F.4th 934 (9th Cir. 2024) ...................................................................................... 13

*BMW of North America v. Gore*,
517 U.S. 559 (1996)....................................................................................................... 3

*Booth v. Appstack, Inc.*,
No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) .................................... 8

*Brown v. Old Navy*,
567 P.3d 38 (Wash. 2025) ................................................................................ 10, 15, 16

*Conway v. Taylor's Executor*,
1 Black 603, 66 U.S. 603 (1862) .................................................................................... 7

*Edenfield v. Fane*,
507 U.S. 761 (1993)..................................................................................................... 10

*Elcon Const., Inc. v. E. Washington Univ.*,
273 P.3d 965 (Wash. 2012) .......................................................................................... 16

*Flynt v. Bonta*,
131 F.4th 918 (9th Cir. 2025) .................................................................................. 6, 10

*Gordon v. Virtumundo*,
575 F.3d 1040 (9th Cir. 2009) ............................................................... 11, 13, 14, 15

*Harrington v. Vineyard Vines, LLC*,
No. C25-1115 TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) ................. 2, 14, 15, 16

*Hartman v. United Bank Card, Inc.*,
291 F.R.D 591 (W.D. Wash. 2013) ................................................................................. 8

*Healy v. Beer Inst., Inc.*,
491 U.S. 324 (1989)....................................................................................................... 7

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
76 F.4th 1164 (9th Cir. 2023) ...................................................................................... 16

*Hickey v. Voxernet LLC*,
887 F. Supp. 2d 1125 (W.D. Wash. 2012) .................................................................... 11

*Hill v. Colorado*,
530 U.S. 703 (2000)....................................................................................................... 6

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - ii
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Hypertouch, Inc. v. ValueClick, Inc.*,
  192 Cal. App. 4th 805, 123 Cal. Rptr. 3d 8 (2011) ............................................................ 12

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
  No. C08-1733JLR, 2009 WL 10676391 (W.D. Wash. May 27, 2009)................................ 16

*Jackson v. Hanesbrands, Inc.*,
  No. 2:25-cv-00440-SAB, 2026 WL 1161444 (E.D. Wash. Apr. 28, 2026) ...................... 1, 5

*Jerde v. Bylt*,
  No. 2:25-CV-01496-JHC, 2026 WL 415445 (W.D. Wash. Feb. 13, 2026) ........................... 1

*Kempf v. FullBeauty Brands Operations LLC*,
  No. C25-1141 TSZ, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026)............... 1, 5, 14, 15, 16

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
  485 U.S. 439 (1988)............................................................................................................. 4

*Ma v. Nike, Inc.*,
  No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026)........................... 1, 14, 16

*Martin v. Miller*,
  600 P.2d 698 (Wash. Ct. App. 1979)..................................................................................... 16

*MaryCLE, LLC v. First Choice Internet, Inc.*,
  890 A.2d 818 (Md. Ct. Spec. App. 2006)............................................................................ 8, 9

*Meilleur v. AT & T Inc.*,
  No. 11-1025 MJP, 2011 WL 5592647 (W.D. Wash. Nov. 16, 2011) .................................. 11

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023)............................................................................................................... 7

*Nat'l Pork Producers Council v. Ross*,
  6 F.4th 1021 (9th Cir. 2021) .................................................................................................. 7

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
  469 F.3d 348 (4th Cir. 2006) ........................................................................................... 13, 14

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970)................................................................................................................ 5

*Repperger v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
  No. 2:25-cv-00526-RLP, 2026 WL 1157157 (E.D. Wash. Apr. 28, 2026)........................ 1, 5

*Rosenblatt v. City of Santa Monica*,
  940 F.3d 439 (9th Cir. 2019) .................................................................................................. 9

*S.D. Myers, Inc. v. City & Cnty. of San Francisco*,
  253 F.3d 461 (9th Cir. 2001) .................................................................................................. 6

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - iii
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Sam Francis Found. v. Christies, Inc.*,
    784 F.3d 1320 (9th Cir. 2015) ................................................................................ 7, 8

*Scott v. Cingular Wireless*,
    161 P.3d 1000 (Wash. 2007) .................................................................................. 3, 9

*Shahpur v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
    No. 2:25-CV-00284-RLP, 2026 WL 571122 (E.D. Wash. Feb. 27, 2026) .................. 1, 5, 16

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) ...................................................................................... 3

*St. Louis, I. M. & S. Ry. Co. v. Williams*,
    251 U.S. 63 (1919) .................................................................................................. 4, 5

*State v. Heckel*,
    24 P.3d 404 (Wash. 2001) ...................................................................................... 5, 9

*Stengel v. Medtronic Inc.*,
    704 F.3d 1224 (9th Cir. 2013) .................................................................................... 11

*United States v. LeCoe*,
    936 F.2d 398 (9th Cir. 1991) ...................................................................................... 13

*United States v. Salerno*,
    481 U.S. 739 (1987) ...................................................................................................... 6

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Counsel, Inc.*,
    425 U.S. 748 (1976) .................................................................................................... 10

*Wakefield v. ViSalus, Inc.*,
    51 F.4th 1109 (9th Cir. 2022) ............................................................................. 3, 4, 5

*Washington State Grange v. Washington State Republican Party*,
    552 U.S. 442 (2008) ...................................................................................................... 6

### Statutes

15 U.S.C. § 7704.......................................................................................................... 2

15 U.S.C. § 7706.......................................................................................................... 2

15 U.S.C. § 7707(b)(1) ................................................................................................ 13

1998 Wash. Sess. Laws 517.......................................................................................... 9

Cal. Civ. Code § 1798.140 (West)................................................................................. 9

H.B. 2274, 69th Leg., Reg. Sess. (Wash. 2026) ............................................................ 2

Wash. Rev. Code § 19.190.020(1)................................................................................. 2

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - iv
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Wash. Rev. Code § 19.190.020(1)(a) ...................................................................... 14

Wash. Rev. Code § 19.190.020(1)(b) ................................................................ 2, 13

Wash. Rev. Code § 19.190.040(1) ........................................................................... 2

Wash. Rev. Code § 19.190.100 ............................................................................... 2

### **Other Authorities**

Fed. Trade Comm'n, CAN-SPAM Act: A Compliance Guide for Business (January 2024), https://www.ftc.gov/business-guidance/resources/can-spam-act-compliance-guide-business ........................................................................................................... 2

H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on H.B. 2752 (Wash. 1998) ................................................................................................. 3

S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess., Senate Bill Report on H.B. 1037 (Wash. 1999) ...................................................... 3

S. Rep. No. 108-102 (2003) ............................................................................. 12, 14

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - v
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## I.    INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) is constitutional. The statute protects Washington residents from deceptive commercial email messages and makes sending them a violation of the Washington Consumer Protection Act (CPA). The federal Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM) does not preempt CEMA. In arguing otherwise, Defendant Destination XL Group, Inc. d/b/a DXL BIG + TALL ("Destination XL") tries to impose on Plaintiffs additional tort elements—like knowledge, reliance, and materiality—that are not part of CEMA nor required by CAN-SPAM to avoid preemption. CAN-SPAM's preemption savings clause specifically carves out and preserves state statutes like CEMA that prohibit misleading or deceptive emails.

CEMA also does not discriminate against out-of-state interests or otherwise violate the dormant Commerce Clause. Like many state laws, CEMA's protection may, at times, have a practical effect on people or companies outside Washington, but that occasional extraterritorial impact does not offend the United States Constitution. Destination XL's arguments misunderstand federal constitutional law and the operation of the interconnected modern economy.

This Court should deny the motion, just as this Court and its sister district have done in eight recent orders. *See Jackson v. Hanesbrands, Inc.*, No. 2:25-cv-00440-SAB, 2026 WL 1161444 (E.D. Wash. Apr. 28, 2026); *Repperger v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 2:25-cv-00526-RLP, 2026 WL 1157157 (E.D. Wash. Apr. 28, 2026); *Agnew v. Macys Retail Holdings LLC*, No. 2:25-CV-02006-JHC, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026); *Shahpur v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 2:25-CV-00284-RLP, 2026 WL 571122 (E.D. Wash. Feb. 27, 2026); *Jerde v. Bylt*, No. 2:25-CV-01496-JHC, 2026 WL 415445 (W.D. Wash. Feb. 13, 2026); *Kempf v. FullBeauty Brands Operations LLC*, No. C25-1141 TSZ, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026); *Ma v. Nike, Inc.*, No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026); *Harrington*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 1
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*v. Vineyard Vines, LLC*, No. C25-1115 TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025), *reconsideration denied sub nom.*, No. C25-1115 TSZ, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026). No Washington court—state or federal—has found the challenged portion of CEMA unconstitutional or preempted by CAN-SPAM.

## II.   BACKGROUND

Adopted in 1998, CEMA's application to email is narrow. At issue here, CEMA prohibits a person from sending email marketing messages containing "false or misleading information," specifically "in the subject line," to email addresses the sender knows or has reason to know belongs to Washington State residents. Wash. Rev. Code § 19.190.020(1)(b). CEMA does not address the content of emails, and unlike CAN-SPAM, CEMA does not contain disclosure requirements about the commercial nature of the email, the location of the sender, or opt-out procedures. *Compare* Wash. Rev. Code § 19.190.020(1) *with* 15 U.S.C. § 7704. While penalties for a CAN-SPAM violation can total $53,088 per email (plus consumer restitution) as of 2025, *see* Fed. Trade Comm'n, CAN-SPAM Act: A Compliance Guide for Business (January 2024),[1] a violation of CEMA is the greater of $500 or actual damages as of 2026, Wash. Rev. Code § 19.190.040(1).[2] Importantly, CEMA has a private right of action for individual consumers, while CAN-SPAM is enforced by federal agencies, state attorneys general, and certain internet providers. *Compare* Wash. Rev. Code § 19.190.100, 040(1) *with* 15 U.S.C. § 7706.

CEMA was designed to address the local impact of spam email on Washington consumers and businesses. The Attorney General's Office reported to the Legislature that during the five-month period before CEMA's passage, of 322 complaints received about unsolicited email, many were commercial advertisements and "spam [was] the highest category of consumer complaints" the office received overall. H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess.,

---

[1] https://www.ftc.gov/business-guidance/resources/can-spam-act-compliance-guide-business.
[2] Pursuant to H.B. 2274 (2026), the Washington Legislature lowered CEMA's per violation penalty from $500 to $100, effective June 11, 2026.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 2
(2:26-cv-00866-JNW)

House Bill Report on H.B. 2752 (Wash. 1998). Legislative testimony emphasized that CEMA "allows expansion of Internet usage while curtailing abuses before they reach crisis." S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess., Senate Bill Report on H.B. 1037 (Wash. 1999).

## III.   ARGUMENT

The State intervenes for the limited purpose of defending CEMA's constitutionality pursuant to 28 U.S.C. § 2403(b). It takes no position with respect to other issues raised in the litigation, including whether the email subject lines at issue are false or misleading as a matter of law. Overall, the State agrees with the arguments regarding CEMA's constitutionality in Plaintiffs' response brief. The State writes separately, however, to offer the perspective of the State's chief law enforcement officer as to CEMA's constitutionality, its proper interpretation, and the importance of private enforcement of consumer protection statutes like CEMA. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007) (observing "[p]rivate actions by private citizens are now an integral part of CPA enforcement" and that consumers "bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests").

## A.   CEMA Does Not Violate the Due Process Clause

Destination XL first challenges CEMA on due process grounds, claiming that "making [Destination XL] pay millions of dollars in statutory damages where no actual injury exists is clearly disproportionate, grossly excessive, and thus a violation of the Due Process Clause." Dkt. 13 at 14. This argument fails.

Destination XL's due process challenge is premature. The three cases upon which Destination XL principally relies—*Wakefield v. ViSalus, Inc.*, 51 F.4th 1109 (9th Cir. 2022), *cert. denied*, 143 S.Ct. 1756 (2023), *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990), and *BMW of North America v. Gore*, 517 U.S. 559 (1996)—

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 3
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

each discussed the potential of due process concerns in the context of damages verdicts issued at the conclusion of trial. Here, the Court has not even certified a class, let alone entered judgment, and it should reject as premature Destination XL's argument that "making it pay millions of dollars . . . is grossly excessive" unless and until the issue is ripe. *See Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988).

*Wakefield* did not establish the bright line rule against aggregated damages Destination XL intimates here. Instead, the Ninth Circuit reiterated that district courts must provide due consideration of the issue at the appropriate time and only "very rarely" in "certain extreme circumstances." 51 F.4th at 1121, 1123. A motion to dismiss in a putative class action—one in which the class has neither been defined nor certified—cannot ever rise to the "certain extreme circumstances" warned about in *Wakefield*.

*Wakefield* involved a class action lawsuit against a robocaller who made more than 1.8 million illegal robocalls to consumers. The minimum statutory damages for each violation under the federal Telephone Consumer Protection Act is $500, and that is the per-penalty amount the trial court awarded, for a total of $925,220,000 in statutory damages. *Id.* at 1116. In reversing the award on due process grounds, the Ninth Circuit concluded that the statutory $500 per-penalty amount was in and of itself constitutional, observing such statutory penalties may be appropriate to secure important legislative purposes, especially in situations (like here) where there are "numberless opportunities for committing the offense." *Id*. at 1121 (quoting *St. Louis, I. M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)). Notably, the Ninth Circuit also did not hold that the $925,220,000 award was unconstitutional, it instead remanded the matter to allow the district court to consider the award in light of various factors including the amount awarded to each plaintiff, the defendant's culpability, and the circumstances of the case. *Id.* at 1125.

The Ninth Circuit made clear that the Fourteenth Amendment guarantee of due process only comes into play "in the most egregious of circumstances," and serves to cap aggregate statutory damages where an actual award is "so severe and oppressive as to be wholly

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 4
(2:26-cv-00866-JNW)

disproportioned to the offense and obviously unreasonable." *Id.* at 1120, 1124 (quoting *St. Louis, I. M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67 (1919)). Indeed, the court cautioned "that only very rarely will an aggregated statutory damages award meet the exacting *Williams* standard and exceed constitutional limitations where the per-violation amount does not." *Id.* at 1123. The core of the analysis rests on the point when these types of aggregated awards transform into something punitive: "constitutional due process limitations are more likely to apply" in circumstances "[w]here a statute's compensation and deterrence goals are so greatly overshadowed by punitive elements." *Id.* at 1122; *see also Kempf*, 2026 WL 395677, at *n.11 (declining to rule on due process challenge to CEMA that was "insufficiently briefed and . . . prematurely seeks a ruling on a constitutional question" that would be unnecessary if plaintiff fails to establish liability).

Destination XL's brief is devoid of this detailed analysis, and the Court should reject the invitation to strike down CEMA's damage provisions on due process grounds at the pleading stage in a case that currently involves three individual plaintiffs. This procedural posture cannot possibly present "the most egregious of circumstances" under any test.

**B.    CEMA Does Not Violate the Dormant Commerce Clause**

Next, Destination XL argues that CEMA violates the dormant Commerce Clause because: (1) CEMA directly controls commerce occurring outside of Washington's boundaries; and (2) CEMA excessively burdens interstate commerce, under the balancing test established by *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Dkt. 13 at 14-15. These arguments generally fail for the reasons in Plaintiffs' response, Dkt. 16 at 15-18, particularly because the Washington Supreme Court rejected a dormant Commence Clause challenge to CEMA decades ago. *State v. Heckel*, 24 P.3d 404, 409-13 (Wash. 2001). This Court and the Eastern District recently rejected dormant Commerce Clause challenges to CEMA as well. *Jackson*, 2026 WL 1161444, at *2; *Repperger*, 2026 WL 1157157, *4-5 ; *Agnew*, 2026 WL 764140, at *1; *Kempf*, 2026 WL 395677, at *5-7; *Shahpur*, 2026 WL 571122, at *4-5. The State endeavors not to repeat Plaintiffs' arguments and instead will emphasize a few points.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 5
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

First, a facial challenge to a statute is highly disfavored and can only succeed if Destination XL meets the incredibly high bar to prove that "no set of circumstances exists under which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Destination XL seeks to lessen that burden by asking the Court to rely upon certain hypotheticals. But "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (internal quotation omitted). Here, CEMA's text confirms that the statute "is surely valid in the vast majority of its intended applications," i.e., it applies to spammers using equipment located in Washington and to the receipt of spam by a Washington resident located in Washington. Destination XL's self-serving hypotheticals at the pleading stage are not sufficient to support a facial challenge, particularly in light of the Supreme Court's warning to "not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *See, e.g.*, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449-50 (2008).

Indeed, Destination XL's hypothetical about sending emails to Washington residents away at college in California (Dkt. 13 at 17) underscore why facial challenges are so disfavored. *See Washington State Grange*, 552 U.S. at 449, 450-51 (facial challenges are disfavored because they "often rest on speculation," "run contrary to the fundamental principle of judicial restraint" and "threaten to short circuit the democratic process"). In short, Destination XL's speculative attorney arguments pointedly ignore "the Supreme Court's clear instruction . . . that extreme caution is warranted before a court deploys its implied authority to reject a state law under the dormant Commerce Clause." *Flynt v. Bonta*, 131 F.4th 918, 926 (9th Cir. 2025), *cert. denied,* No. 25-173, 2026 WL 79841 (U.S. Jan. 12, 2026) (cleaned up).

Second, Destination XL overemphasizes the importance of the alleged extraterritorial impact of CEMA under the dormant Commerce Clause in the interconnected modern economy.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 6
(2:26-cv-00866-JNW)

*See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374-75 (2023) ("In our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior."). The Ninth Circuit aptly noted that while the dormant Commerce Clause is "not yet a dead letter," certainly "it is moving in that direction." *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1033 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023). Before that, in *Healy v. Beer Inst., Inc.*, 491 U.S. 324 (1989), the Supreme Court stated that in some situations "a statute that directly controls commerce occurring wholly outside the boundaries of a state exceeds the inherent limits of the enacting State's authority." 491 U.S. at 336.

In 2023, the Supreme Court clarified that extraterritorial effects alone do not violate the dormant Commerce Clause. *Nat'l Pork Producers*, 598 U.S. at 370-71. The Court explained that the challenged statutes in *Healy* and other extraterritoriality cases "had a specific impermissible 'extraterritorial effect'—they deliberately 'prevent[ed out-of-state firms] from undertaking competitive pricing' or 'deprive[d] businesses and consumers in other States of 'whatever competitive advantages they may possess.'" *Id.* at 374 (quoting *Healy*, 491 U.S. at 338-39). Although several Justices wrote separately, "the Court unanimously disavow[ed] petitioners' 'almost per se' rule against laws with extraterritorial effects." *Id.* at 389 n.4; *see also id.* at 394 (Roberts, C.J., concurring in part); *id.* at 403, n.1 (Kavanaugh, J., concurring in part). Thus, the Supreme Court warned courts to use "extreme caution . . . before . . . deploy[ing] this implied authority." *Nat'l Pork Producers*, 598 U.S. at 390. "Preventing state officials from enforcing a democratically adopted state law in the name of the dormant Commerce Clause is a matter of 'extreme delicacy,' something courts should do only 'where the infraction is clear.'" *Id.* (quoting *Conway v. Taylor's Executor*, 1 Black 603, 634, 66 U.S. 603 (1862)). There is no substantial, non-speculative extraterritorial impact here, certainly not one rising to a level of constitutional magnitude.

Even if the statute applies in some instances to email received while a Washington resident is outside the state, it is constitutional. Destination XL relies on *Sam Francis Foundation*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 7
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) for the proposition that any regulation that relies on a consumer's residency violates the dormant Commerce Clause. Dkt. 13 at 16-17. That is an overreading of the case. As the Ninth Circuit noted in *Sam Francis*, the challenged law imposed a tax on actual out-of-state transactions, art sales, California residents made even where "the sculpture, the artist, and the buyer never traveled to, or had any connection with, California." 784 F.3d at 1323. Here, however, Destination XL does not dispute that it blankets Washington consumers with email marketing messages—i.e., that it intends to produce effects, generate consumer engagement and purchasing, in Washington, by Washingtonians. Destination XL is not arguing that it assiduously tries to avoid marketing to Washington and is then unexpectedly exposed to liability there. Rather, it wants to be excused from liability based on the vagaries of where some of those Washingtonians are located when they open Destination XL's emails.

Destination XL's reliance upon cases interpreting the Washington Automatic Dialing and Announcing Device statute (WADAD)—and other state statutes governing telemarketing—is misplaced. Dkt. 13 at 15-16 (citing *e.g.*, *Hartman v. United Bank Card, Inc.*, 291 F.R.D 591 (W.D. Wash. 2013); *Booth v. Appstack, Inc.*, No. C13-1533JLR, 2015 WL 1466247 (W.D. Wash. Mar. 30, 2015)). These cases rely on *Healy* for the purported per se rule against extraterritoriality. None of them were decided after *National Pork Producers* clarified *Healy*.

Simply put, a company that directs its commercial email to Washington residents does not get a free pass from compliance with Washington law when the resident is temporarily traveling out of state but continues, as we all do, to check their email. Courts have upheld similar statutes facing dormant Commerce Clause challenges, even where those statutes are not limited to emails sent via equipment physically located in the state. *See MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818 (Md. Ct. Spec. App. 2006). The *MaryCLE* court expressly held there was no dormant Commerce Clause violation because "[i]n order to violate the Act, an email advertiser must either use equipment located in the State of Maryland or send prohibited [email] to someone he knows or should know is a Maryland resident." *MaryCLE*, 890 A.2d at 844

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 8 (2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

(emphasis added). The *MaryCLE* court noted that the defendant's "business decision" to send email "all over the country, invoking the probability that it will be received by Maryland residents" was "markedly different" than the "practical effects" involved in the Supreme Court's extraterritoriality cases. *Id.* at 842-43.

Additionally, although both parties speak broadly about the local benefits of CEMA, it is clear CEMA has a connection to Washington, a strong one—it is limited to emails targeting Washington residents. The Washington Legislature and the Washington Supreme Court have identified the legitimate local benefits of CEMA, *see* 1998 Wash. Sess. Laws 517 (former Wash. Rev. Code § 19.190.005) (describing complaints about the growing volume of commercial email); *State v. Heckel*, 24 P.3d 404, 409-10 (Wash. 2001) (detailing local benefits from CEMA), and the Court must "presume the law serves the [state's] legitimate interests." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019). Destination XL, as the party bearing the burden here, *id.*, cannot overcome the presumption in favor of CEMA's local benefits. This is especially true in light of one of CEMA's key distinctions with CAN-SPAM, i.e., a private right of action. The Washington Supreme Court long ago recognized that a private right of action—particularly through a class action where individual harm might be nominal—is key to promoting the public good, and that without it "many meritorious claims would never be brought." *Scott*, *supra*, 161 P.3d at 1006. Thus, the local benefits from CEMA rest in both its statutory text and its method of enforcement by private suits.

Zooming out, Destination XL's theory of the dormant Commerce Clause would eviscerate any state law protecting consumers from unfair or deceptive internet marketing. State data privacy statutes—many of which are based on residency—would also presumably be subject to invalidation. *See, e.g.*, Cal. Civ. Code § 1798.140 (West) (defining "consumer" for purposes of the California Consumer Privacy Act as "a natural person who is a California resident, as defined in Section 17014 of Title 18 of the California Code of Regulations" which further defines a "resident" as "(1) every individual who is in the State for other than a temporary

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS - 9 (2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

or transitory purpose, and (2) every individual who is domiciled in the State who is outside the State for a temporary or transitory purpose"). In a realm where courts have insisted on "extreme caution," *Flynt*, 131 F.4th at 926, Destination XL's sprawling view of the dormant Commerce Clause is a non-starter.

## C.    CEMA Does Not Violate the First Amendment

Finally, Destination XL argues that CEMA violates the First Amendment. Although it seems to have largely abandoned this argument in its reply (Dkt. 25 at 10:24-11:2), the State writes to express its agreement with Plaintiffs' analysis. False and deceptive commercial speech enjoys no protection under the First Amendment. *See Edenfield v. Fane*, 507 U.S. 761, 768 (1993) ("the State may ban commercial expression that is fraudulent or deceptive without further justification"); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Counsel, Inc.*, 425 U.S. 748, 771 (1976) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake. Obviously, much commercial speech is not provably false, or even wholly false, but only deceptive or misleading. We foresee no obstacle to a State's dealing effectively with this problem.") (citations omitted). This Court's analysis can stop there. No analysis of the *Central Hudson* factors is required, but even if it were, the challenged portion of CEMA does nothing more than prohibit false or misleading information in the subject line of a commercial email—it is narrowly tailored to prohibiting false or misleading commercial speech, which the government has a compelling interest in prohibiting, and it is narrowly tailored to only prohibiting that unprotected category of speech.

Destination XL's argument boils down to its belief that its emails do not contain anything false or misleading. *See* Dkt. 13 at 18 ("DXL's email subject lines were not false or misleading"). That is a question for the merits, not a motion to dismiss. And to the extent Destination XL believes Plaintiffs "are extending CEMA well beyond deception by applying it to statements that are immaterial, and at best amount to non-actionable puffery," (*id.*), this too is a merits question. *See also Brown v. Old Navy*, 567 P.3d 38, 47 (Wash. 2025) (holding CEMA does not prohibit

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 10
(2:26-cv-00866-JNW)

mere technical errors or puffery). Destination XL is not entitled to invalidate a Washington consumer protection statute on constitutional grounds because it disagrees with allegations in a complaint.

**D.      CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject Lines**

Any preemption analysis begins with the "presumption against supplanting the historic police powers of the States by federal legislation unless that is the clear and manifest purpose of Congress." *Gordon v. Virtumundo*, 575 F.3d 1040, 1060 (9th Cir. 2009) (cleaned up). "This presumption against preemption leads us to the principle that express preemption statutory provisions should be given narrow interpretation." *Id.* (cleaned up). Destination XL, as the party "seeking to invalidate a state law based on preemption bear[s] the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227-28 (9th Cir. 2013) (en banc) (cleaned up). "Consumer protection is an area of traditional state authority creating a presumption against federal preemption." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012) (citing *Meilleur v. AT & T Inc.*, No. 11-1025 MJP, 2011 WL 5592647 at *3 (W.D. Wash. Nov. 16, 2011)).

**1.      CAN-SPAM exempts consumer protection statutes like CEMA**

CAN-SPAM was never intended to replace traditional state regulation of unfair and deceptive acts and practices (like CEMA). Although Destination XL wishes the Court to focus on one aspect of CAN-SPAM's intent—the need for national regulations—the company ignores the primary purpose of CAN-SPAM: to reduce the sheer volume of unwanted commercial email messages. In fact, the Senate Report accompanying the bill does not list anything akin to "creating a uniform national system of regulations" among its purposes:

> The purposes of this legislation are to: (i) prohibit senders of electronic mail (e-mail) for primarily commercial advertisement or promotional purposes from deceiving intended recipients or Internet service providers as to the source or subject matter of their e-mail messages; (ii) require such e-mail senders to give recipients an opportunity to decline to receive future commercial e-mail from

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 11
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

them and to honor such requests; (iii) require senders of unsolicited commercial e-mail (UCE) to also include a valid physical address in the e-mail message and a clear notice that the message is an advertisement or solicitation; and (iv) prohibit businesses from knowingly promoting, or permitting the promotion of, their trade or business through e-mail transmitted with false or misleading sender or routing information.

S. Rep. No. 108-102 at 1 (2003). In short, CAN-SPAM (like CEMA before it) was consumer protection legislation, not legislation designed to benefit companies that send mass email.

While CAN-SPAM does indeed set some uniform national standards for certain technical issues like opt-out mechanisms, sender identification, and postal address disclosure, none of the national standards in CAN-SPAM relate to traditional consumer protection regulations that addressed unfair and deceptive acts and practices in email:

> The legislation would supersede State and local statutes, regulations, and rules that expressly regulate the use of e-mail to send commercial messages except for statutes, regulations, or rules that target fraud or deception in such e-mail. Thus, a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted . . . . Statutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway.

S. Rep. No. 108-102 at 21-22 (2003) (emphasis added). CAN-SPAM also specifically exempts other non-email consumer protection statutes. *Id.* at 22. In short, CAN-SPAM was never trying to "fix" a problem with consumer protection regulations like CEMA. *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 824, 123 Cal. Rptr. 3d 8 (2011) ("The legislative history also makes clear . . . that [CAN-SPAM's] preemption provision was largely intended to target state statutes imposing content requirements on commercial e-mails, while leaving states free to regulate the use of deceptive practices in commercial e-mails in whatever manner they chose.").

It is no surprise then that while CAN-SPAM's preemption clause states that the statute supersedes any state law that "regulates the use of electronic mail to send commercial messages," it expressly exempts "any such statute" that "prohibits falsity or deception in any portion of a

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 12
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). The CEMA provision at issue here does just that, prohibiting any email that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). Not only is this consistent with the history of CAN-SPAM, this plain language should end the preemption analysis. *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024) (to interpret an express preemption clause, a court is required "to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law"). Moreover, CEMA predates CAN-SPAM by several years, so the conclusion that CEMA fits squarely into the preemption exemption is further supported by the long-standing rule that "Congress is, of course, presumed to know existing law pertinent to any new legislation it enacts." *United States v. LeCoe*, 936 F.2d 398, 403 (9th Cir. 1991).

**2.      A plaintiff need not plead common law tort elements to avoid preemption**

Despite CAN-SPAM's plain language, Destination XL presses a restrictive reading of the preemption clause, asserting it saves only traditional tort theories like common-law fraud— or other torts containing similar elements like materiality, reliance, and knowledge from preemption. Dkt. 13 at 8-9 (relying primarily on *Virtumundo*). This is incorrect as a matter of law and cannot be squared with Destination XL's own authorities—none of which state "only" tort claims are exempt.

Over sixteen years ago, *Virtumundo* addressed the scope of CAN-SPAM's preemption clause as an issue of first impression in this circuit, relying in part on the then-only federal circuit court decision addressing the clause: *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006). *Virtumundo,* 575 F.3d at 1059-60. However, neither *Virtumundo* nor *Omega* held that common law torts like fraud are the "only" state law claims saved from the CAN-SPAM preemption clause. To the contrary, both cases *confirm* the exception applies broadly to "traditionally tortious <u>or wrongful conduct</u>." *Virtumundo*, 575 F.3d at 1062 (quoting *Omega*, 469 F.3d at 354) (emphasis added). Far from supporting Destination XL's arguments,

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 13
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Virtumundo* explained state law claims about deceptive email subject lines were not preempted. *Id*. at 1062 (observing the legislative intent that "a State law prohibiting *fraudulent or deceptive* headers, subject lines, or content in commercial e-mail would not be preempted").

Thus, as courts have already observed, because CEMA's subject-line provision prohibits only "falsity" or "deception" in the subject line of commercial e-mails, it "falls squarely within this area reserved to the States[.]" *Harrington*, 2025 WL 3677479, at \*1; *see also Ma*, 2026 WL 100731, at \*2 (same); *Kempf*, 2026 WL 395677, at \*4 (same). This conclusion is likewise supported by the Senate Report accompanying CAN-SPAM, which explained that although CAN-SPAM Act's purpose was to impose a single national standard for the content of commercial e-mail, "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." S. Rep. No. 108-102, at 21-22 (2003).

In any event, *Virtumundo* did not directly address deceptive email subject lines. Instead, it considered whether CAN-SPAM preempted the plaintiff's claims under CEMA's provision (1)(a), which prohibits email that "misrepresents or obscures" information about the sender. Wash. Rev. Code § 19.190.020(1)(a). That provision is not at issue here. And unlike this case, the *Virtumundo* plaintiff admitted none of the emails at issue misled or deceived him "in any way." *Virtumundo*, 575 F.3d at 1063. Rather, he asserted the sender should have been "Virtumundo" rather than the abbreviated domain names they used. *Id*. at 1063-64. The Ninth Circuit concluded that such "technical" allegations of "non-deceptive" inaccuracies or omissions are "at best" claims for "incomplete or less than comprehensive information." *Id*. at 1064. Understandably, the court concluded that to the extent that provision (1)(a) addressed non-deceptive acts and practices, this did not rise to the level of "wrongful conduct" or "falsity or deception" necessary to avoid preemption. *Id*. at 1062, 1064. The *Omega* court likewise was focused on state law claims that could potentially impose strict liability for "insignificant inaccuracies" or "bare error" rather than "falsity or deception." 469 F.3d at 352-56. This case, in

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 14
(2:26-cv-00866-JNW)

contrast, is about provision 1(b), which only prohibits "false or misleading information" and cannot be read to impose liability for simple mistakes. *Virtumundo* and *Omega* thus do not support preemption.

Further, in *Virtumundo*, the Ninth Circuit acknowledged that CEMA's statutory framework at least suggested CEMA "extends only to deceptive commercial e-mail" rather than non-deceptive acts or mere clerical errors. 575 F.3d at 1059, n.17. When the Ninth Circuit decided *Virtumundo* in 2009, however, it observed that how narrowly or broadly to interpret CEMA was unsettled. *Id.* at 1059. The *Virtumundo* court thus concluded that "state courts may ultimately mold CEMA's broad language so as to cabin its breadth or interpret the law in conformity with federal legislation." *Id*. Last year, following certification from this Court, the Washington State Supreme Court did just that in *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025).

In *Brown*, the court confirmed that CEMA's subject-line provision does not prohibit mere technical errors or "mere puffery." *Id*. The *Brown* court held CEMA's subject-line provision addresses deceptive "representations of fact—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions." *Id. Brown* thus addressed the concern the *Omega* court had in 2006 that sweep up mere errors. As courts have recently recognized, *Brown* confirmed CEMA with CAN-SPAM are not in conflict by making clear that rather than targeting mere errors, CEMA's subject-line provision prohibits false or deceptive statements about facts that would be important to consumer decision making. *See Harrington,* 2025 WL 3677479, at *1; *Kempf*, 2026 WL 395677, at *5 (both quoting *Brown*).

Tellingly, Destination XL brushes past the *Brown* opinion, instead arguing that Plaintiffs are required to show that the challenged subject lines were both material generally and material to their own purchasing decisions to survive preemption. Dkt. 13 at 11. This argument for pleading individualized reliance cannot stand after *Brown*, where the Washington State Supreme

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 15
(2:26-cv-00866-JNW)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Court held that CEMA's subject-line provision does not target puffery or "banal hyperbole" and instead allows for claims premised upon misrepresentations of fact to Washington consumers. 567 P.3d at 47; *see also Harrington*, 2025 WL 3677479, at *1 (same, quoting *Brown*). Nothing in the *Brown*, *Harrington*, *Kempf*, *Shahpur*, *Ma*, *Agnew*, *Jerde*, *Repperger*, or *Jackson* opinions requires an individualized assessment or pleading of reliance by each plaintiff.[3]

Destination XL's reliance upon *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009), to support its arguments asserting otherwise is mystifying. Dkt. 15 at 12, 16. In that case, this Court rejected the very same argument that Destination XL advances here, i.e., that a plaintiff is required to allege all elements of fraud to bring a CEMA claim. Destination XL's other cited legal authority for this argument fares no better. Those cases deal with different claims and speak to their elements, not CEMA. *See* Dkt. 13 at 10 citing *Martin v. Miller*, 600 P.2d 698, 700 (Wash. Ct. App. 1979) (assessing "common law fraud"); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (assessing False Claims Act claim); *Elcon Const., Inc. v. E. Washington Univ.*, 273 P.3d 965, 970-71 (Wash. 2012) (assessing "fraudulent inducement" claim).

//

//

//

//

//

---

[3] In its reply, Destination XL argues that it did not cite the recent CEMA decisions in this Court and the Eastern District because they are distinguishable. *See* Dkt. 25 at 7. Specifically, Destination XL argues that "many of the decisions . . . address arguments that CAN-SPAM entirely preempted CEMA, which is not what DXL argues. *Id.* (citing *Agnew*, *Shahpur*, *Kempf*, and *Ma*). This is incorrect. In each case, defendants argued that CEMA was preempted by CAN-SPAM with respect to the commercial emails they sent to plaintiffs. And even if Destination XL can divine something in those cases demonstrating that defendants intended to invalidate the entirety of CEMA, that distinction makes no difference with respect to the preemption analysis.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 16
(2:26-cv-00866-JNW)

## IV.    CONCLUSION

The State respectfully requests that the Court deny Destination XL's constitutional challenges to CEMA.

DATED this 8th day of June, 2026.

NICHOLAS W. BROWN
Attorney General


*s/ Ben Brysacz*

BEN BRYSACZ, WSBA #54683
CLAIRE MCNAMARA, WSBA #50097
Assistant Attorneys General
Attorneys for Plaintiff-Intervenor State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA  98104 206-474-7744
ben.brysacz@atg.wa.gov
claire.mcnamara@atg.wa.gov

*I certify that this memorandum contains 5,656 words, in compliance with the Local Civil Rules.*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS - 17
(2:26-cv-00866-JNW)