The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JULY DODSON, TENADORE FOWLER, and RYAN TAMM, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DESTINATION XL GROUP, INC., d/b/a DXL BIG + TALL,<br><br>Defendant. | CASE NO. 2:26-cv-00866-JNW<br><br>**DEFENDANT'S SUPPLEMENTAL BRIEF IN RESPONSE TO COURT'S ORDER TO SHOW CAUSE**<br><br>Action Filed: February 12, 2026<br>Date Removed: March 13, 2026 |



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

Defendant Destination XL Group, Inc. d/b/a DXL Big + Tall ("DXL") respectfully submits this supplemental brief in response the Court's August 27, 2026 Order to Show Cause (*see* Dkt. 39, as amended by Dkt. 41, hereafter, the "Order"), and answers the questions posed therein[1] as follows:

**First,** this action should be stayed pending the Ninth Circuit's resolution of *Montes*, which may *inter alia* resolve the merits of Plaintiffs' claims and the Article III standing question this Court has raised. Courts in this District have stayed materially CEMA identical cases for this reason.

**Second,** should the Court reach the standing question now, and without conceding Plaintiffs entitlement to recovery or the facial adequacy of their allegations under *Iqbal*/*Twombly*, DXL contends that Plaintiffs have adequately alleged a concrete injury sufficient for Article III standing purposes.

**Third**, regardless of whether CEMA damages are ultimately calculated on a per-email or per-recipient basis, DXL contends the amount in controversy in this case, based on the allegations in the Complaint and reasonable inference to be drawn therefrom, is sufficient to support federal jurisdiction, and therefore that diversity or CAFA removal is/was proper. *See also* Dkt. 1 (Notice of Removal).

## I. The Court Should Stay this Entire Action Pending Resolution of *Montes*.

This entire action should be stayed pending a decision in the *Montes* matters.[2] In fact, as DXL previously informed the Court in its motion to stay discovery (*see* Dkt. 36 at 1, 4-5, n. 1), multiple courts in this District have stayed similar CEMA/CPA cases ***entirely*** pending the forthcoming ruling in *Montes I*, where the Ninth Circuit will soon be deciding whether a plaintiff can state a plausible CPA claim based on allegedly false sale advertising, absent an allegation of economic loss to a business. *See, e.g., Lashley v. Amazon.com Inc.,* 2024 WL 5315310, at *2 (W.D. Wash. Dec. 30, 2024) (staying plaintiffs' substantially similar CPA claim because *Montes I* "could affect the Court's ruling on [the defendant's] … motion to dismiss" and finding "that the parties will not be prejudiced by the

---

[1] In summary, the Order asks: (1) whether Plaintiffs have Article III standing to bring their claims under Washington's Consumer Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA") and, if not, whether this action should be remanded to state court or stayed pending the Ninth Circuit's rulings in *Montes*; and (2) whether damages under CEMA should be calculated on a per-email or per-recipient basis and, in turn, whether the amount-in-controversy for diversity or CAFA removal is met.

[2] The Order does not specify which "*Montes*" the parties are expected to address. This brief refers to *Montes v. SPARC Grp., LLC,* No. 23-35496 (9th Cir.) as "*Montes I*" and *Montes v. Penney Opco, LLC*, No. 26-241 (9th Cir.) as "*Montes II*"—both of which are relevant to the Court's inquiries.


MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

delay, and the efficiencies achieved by waiting for the Ninth Circuit's decision … outweigh any potential delay that might occur").[3] Multiple courts in this District have also stayed cases pending the outcome of *Montes II*, where the Ninth Circuit will soon resolve whether an alleged CEMA violation involving email subject lines without allegations of actual harm suffice for Article III standing. *See, e.g., Liss v. Skechers USA Inc.,* 2026 WL 2500999, at *1-2 (W.D. Wash. Aug. 25, 2026) (Estudillo, J.) (finding that, while the court had previously determined that the plaintiff had standing based on similar allegations of injury, it was "prudent to stay this case pending guidance from the Ninth Circuit [in *Montes I* and *Montes II*], which will significantly impact the course of this case and other CEMA cases currently before the Court").[4] Together, the forthcoming *Montes* rulings may (and likely will) provide binding appellate guidance on, and thus resolve, not only the merits of Plaintiffs' CEMA/CPA claims as pled but also the question of their Article III standing raised in the Order, making entering a similar stay here appropriate. *See, e.g., id.*; *see also Washington v. Trump,* 2017 WL 2172020, at *2 (W.D. Wash. May 17, 2017) ("District courts often stay proceedings where resolution of an appeal in another matter is likely to provide guidance to the Court in deciding issues before it.") (citation omitted).

Further, in deciding whether to stay cases, courts in the Ninth Circuit consider, *inter alia*, (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (citation omitted). Considering these factors weighs heavily in favor of entering a stay in this case:

**First**, a stay poses little (if any) risk of prejudice to Plaintiffs. This action is in its earliest stages—the pleadings are not closed, the Court has not entered a discovery schedule, no trial date has been set, and rulings in *Montes* are imminent. Thus, any delay attendant to awaiting the Ninth Circuit's

---

[3] *See also Harrington v. Vineyard Vines, LLC*, No. 25-cv-1115-TSZ (W.D. Wash., Apr. 17, 2026), Dkt. 64 (staying case based on *Montes I* and listing other similarly stayed matters); *Zastrow v. RugsUSA, LLC*, 2025 WL 2145571, at *2-3 (W.D. Wash. July 29, 2025) (staying case based on *Montes I*).

[4] *See also Iniguez v. Crate & Barrel Holdings, Inc.,* No. 2:26-cv-02370-JHC, Dkt. 23 (W.D. Wash. Aug. 7, 2026); *Talley v. Everlane, Inc.,* No. 2:26-cv-00007-KKE, Dkt. 28 (W.D. Wash. June 12, 2026); *Devivo v. Sheex*, No. 3:25-cv-05807-DGE, Dkt. 62 (W.D. Wash. Aug. 25, 2026).



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

decisions in *Montes* is likely to be very short and certainly will not be indefinite. *See also Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007).

**Second**, conversely, DXL faces hardship absent a stay. Without a stay, DXL would be required to engage in costly class discovery, as to which it will bear the most burden and expense as the defendant. More than that, absent a stay, the parties would be required to litigate, and the Court would have to decide, the same threshold standing and amount-in-controversy questions now pending before the Ninth Circuit, as well as the merits of Plaintiffs' underlying claims, risking duplicative effort and the strong possibility that any ruling by this Court is later undone by rulings in the *Montes* matters.

**Third**, a stay would serve the orderly course of justice by simplifying the issues in this case. As noted above, through *Montes*, the Ninth Circuit will resolve whether Plaintiffs have adequately pled a CPA claim and whether their claimed injuries sufficiently confer Article III standing—the primarily concern the Court raises in its Order. A decision one way or the other will materially narrow, and may eliminate, the issues the parties and the Court must resolve. In contrast, it would be wildly inefficient to remand the case for lack of standing now, when *Montes II* may resolve that issue and DXL will simply have to remove the case again and the parties would effectively need to start anew.

## II. Plaintiffs Have Adequately Alleged Article III Standing.

If the Court reaches the standing question now anyway, DXL respectfully submits Plaintiffs have adequately alleged their Article III standing, and thus that this Court should retain jurisdiction.

DXL emphasizes the distinction that governs the inquiry here—the injury required for Article III standing is not the same as the injury required to prevail on the merits or to survive federal preemption. It is axiomatic that "the injury-in-fact prong of Article III standing and the merits of a [statutory] claim are separate inquiries." *Jones v. Ford Motor Co*., 85 F.4th 570, 573-74 (9th Cir. 2023). Thus, Plaintiffs' failure to allege a CPA injury (as argued in DXL's Motion to Dismiss) has no bearing on whether they have alleged an injury for Article III. *Id*. ("A particular cause of action may require more [than Article III] without raising the constitutional pleading floor."). Instead, this deficit in their pleading "shows a failure to state a claim, not a failure to establish standing." *Id*. at 574. In other words, a litigant may have pled they suffered an injury sufficient for Article III standing, but still not


MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

meet federal pleading standards or avoid a preemption dismissal. *See, e.g., Doe v. Chao,* 540 U.S. 614, 624–25 (2004) (explaining an individual may suffer Article III injury and yet fail to plead a claim); *Murphy v. Kochava Inc.,* 2023 WL 6391061, at *4–5, *7 (D. Idaho Oct. 2, 2023) (holding plaintiffs in putative class action had Article III standing to pursue Washington CPA claim but dismissing for failure to adequately allege injury to business or property and other elements); *Bank v. GoHealth, LLC,* 2021 WL 2323282, at *6–12 (E.D.N.Y. Mar. 8, 2021) (ruling similarly in a Telephone Consumer Protection Act ("TCPA") case). Therefore, DXL's position that Plaintiffs have not plausibly alleged any actionable or recoverable harm, as argued in its Motion to Dismiss, is consistent with its conclusion in this brief that Plaintiffs have cleared the low Article III standing pleading hurdle.[5]

To be clear, DXL does not concede there are sufficient facts pled regarding their harm or supporting the other essential elements of their claims, as needed to avoid a dismissal under *Iqbal*/*Twombly*. Rather, it only addresses here whether Plaintiffs have pleaded a concrete injury. They have done so. To establish Article III standing, a federal plaintiff must plead, *inter alia,* "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 331 (2016). But even intangible harms can be sufficiently "concrete" and confer Article III standing, per the Supreme Court. *See TransUnion* 594 U.S. at 425. Moreover, the Ninth Circuit has recognized that "an alleged violation of a statutory provision that protects a substantive right is sufficient to establish concrete injury" alone. *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1005 (W.D. Wash. 2019) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017) (TCPA case, no additional harm needed for standing)).

Along these lines, the Washington Legislature enacted CEMA with the intention of "address[ing] unwanted e-mail messages referred to as 'spam'." *Wright v. Lyft, Inc.*, 189 Wash.2d 718,

---

[5] This is a key distinction. In this brief, DXL contends Plaintiffs have alleged an injury sufficient for Article III standing. But what Plaintiffs have ***not*** done (as DXL's Motion to Dismiss shows) is allege sufficient plausible facts supporting key elements of their claims, including an injury ***to business or property*** to support a CPA claim, which the Washington Supreme Court held is a required element of such a claim. *See Montes v. SPARC Grp., LLC,* 586 P.3d 999, 1001, 1007 (Wash. 2026). In short, their injury allegations are enough for standing, but not to avoid dismissal for failing to state a claim.

724 (Wash. 2017). The Washington Supreme Court has found that the deceptive emails targeted by CEMA "harms businesses and individual internet users because [they] take[] up time, cause[] frustration … and make[] it 'virtually impossible to distinguish spam from legitimate personal or business messages.'" *Harbers*, 415 F. Supp. 3d at 1007 (quoting *State v. Heckel*, 24 P.3d 404, 410 (Wash. 2001)). Such "harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions," which courts routinely adjudicate. *Id.* at 1008; *see also Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1044-45 (9th Cir. 2009) ("[S]pam is largely considered a nuisance and a source of frustration to e-mail users who. . . must wade through inboxes clogged with messages peddling assorted, and often unwanted, products and services."). Consistent with these principles, therefore, several courts in this District have held that receipt of emails with allegedly false or misleading subject lines in violation of CEMA alone constitutes an injury in fact sufficient for Article III standing. *See, e.g., Harbers*, 415 F. Supp. 3d at 1008-11 (receipt of deceptive emails in violation of CEMA alone, without more, confers Article III standing, and "satisfies the concreteness requirement, even absent additional allegations of harm" and thus denying motion to remand).

As one recent example, in *Liss v. Skechers USA Inc.*, Judge Estudillo ordered the parties to show cause as to why plaintiffs had Article III standing, concluded "a violation of CEMA confers Article III standing," and reasoned that plaintiffs alleging they were "spammed" and "blasted" with unwanted, supposedly deceptive commercial emails "ha[ve] suffered injury in precisely the form the statute was intended to guard against[.]"2026 WL 1392327, at *2–3 (W.D. Wash. May 19, 2026) (citations omitted, denying motion to remand). In the same order, Judge Estudillo found that the amount in controversy, as alleged, met the CAFA requirement. *Id.* at *4. Further, as this Court noted in its Order (Dkt. 39 at 2), Judge Estudillo likewise ordered parties in a similar CEMA case to show cause as to why the case should not be remanded to state court for lack of standing. *See Devivo v. Sheex*, 2026 WL 775625, at *1-3 (W.D. Wash., March 19, 2026). But Judge Estudillo reached the same conclusions and found standing there. *See* Case No. 3:25-cv-05807-DGE, Dkt. 41 (June 16, 2026).

Here, Plaintiffs allege, *inter alia,* that DXL "spams" and "bombarded" Washington consumers with commercial emails whose subject lines employ tactics to create a false sense of urgency, flooding


MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

their in-boxes with "repeated false notifications" and exposing consumers to "unanticipated and unwanted volumes of commercial email," which they contend is a "violation of their rights to be free from such annoyance and harassment under CEMA." Dkt. 1-1, ¶¶ 4-5, 23, 25, 95. For purposes of the Article III inquiry, those allegations are taken as true; and they closely mirror the allegations held sufficient for Article III standing purposes in cases like *Harbers*, *Liss*, and *Devivo,* and in others.[6]

The Court's Order (Dkt 39 at 2) also points to other CEMA/CPA cases that have been remanded by other courts in this District, *Nuri* and *Hutton,* for lack of standing. Respectfully, those are inapplicable here. In *Nuri v. True Religion Apparel*, 2026 WL 864886 (W.D. Wash. Mar. 30, 2026), the court remanded the case for lack of Article III standing after issuing an order to show cause. Taking the allegations in Plaintiffs' Complaint here as true, this case is distinguishable from *Nuri*, where the plaintiff affirmatively alleged that she had provided her email address to the defendant and wished to continue receiving its emails. *Id.* The Complaint at bar pleads that Plaintiffs were "spammed" and subjected to ***unwanted***, deceptive communications. *See* Dkt. 1-1, ¶¶ 23, 63, 74. That key distinction is what separates *Liss* (standing found) from *Nuri* (remanded). *See* 2026 WL 1392327, at *3-4.

This case is also distinguishable from *Hutton v. Papa Johns*, 2026 WL 2210133 (W.D. Wash. July 31, 2026), where the court found that the plaintiff did not allege a concrete harm under Article III because the complaint did not allege that the plaintiff felt harassed or bombarded by the defendant's emails. *Id*. at *3-4. In contrast, Plaintiffs' Complaint here alleges that DXL "bombarded Plaintiffs with commercial emails whose subject lines contain false or misleading statements in violation of their rights to be free from such ***annoyance and harassment***." Dkt. 1-1, ¶ 95 (emphasis added).

## III. <u>The Amount in Controversy is Satisfied, Regardless of How Damages are Calculated.</u>

The Court need not necessarily resolve the per-email versus per-recipient question to confirm its jurisdiction, because the amount in controversy for removal purposes is satisfied regardless.

[6] In fact, courts in the Ninth Circuit have consistently found Article III standing under similar consumer protection statutes, where the alleged receipt of an unwanted communication was alone sufficient. *Cf. Van Patten at* 847 F.3d 1043; *see also Hall v. Smosh Dot Com, Inc.,* 72 F.4th 983, 986 (9th Cir. 2023) (TCPA case); *Chennette v. Porch.com, Inc*., 50 F.4th 1217, 1222 (9th Cir. 2022) (same); *Chin v. Evergreen Freedom Found*., 764 F. Supp. 3d 924, 934 (C.D. Cal. 2025) (California statute).



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

The amount in controversy is "simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). In other words, it is the "amount at stake in the underlying litigation" and it embraces inter alia requests for injunctive relief and attorneys' fees. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018). A removing defendant "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Because the amount in controversy is measured "from the face of the pleadings," "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363-64 (9th Cir. 1986). While the proper measurement of statutory damages under CEMA will be a disputed merits issue, it is the "amount Plaintiffs contend is at issue under the statute defines the amount in controversy, 'regardless of whether they are (or are not) ultimately right about such matters.'" *Liss*, 2026 WL 1392327 at *4 (quoting the parties' briefing). In short, whether Plaintiffs can actually recover is immaterial, and generally the amount in controversy factor is not a high hurdle to clear and need not be supported by evidence. Rather, the amount can be determined by considering the pled allegations and reasonable assumptions that can be drawn therefrom. *See* Dkt. 1 at 6-10 (collecting cases).

Here, Plaintiffs plead that they seek statutory minimum damages of $500 for each allegedly violative email, seek treble damages (*i.e.*, $1,500 per), and that the estimated class includes "minimally thousands of members." Dkt. 1-1, ¶¶ 114, 137; *see also* RCW 19.190.040(1). Plaintiffs also allege that (i) DXL "has sent over one thousand three hundred twenty-six (1,326) marketing emails, averaging over three emails per day" in the prior twelve months, (ii) their claims are "typical" of the class members and they each received approximately six emails, and (iii) they seek to represent a putative class of Washington residents over a four-year class period. *See* Dkt. 1, ¶ 6 (summarizing allegations). Thus, on Plaintiffs' own pled per-email theory, and applying the reasonable assumptions permitted at this stage, the aggregate amount in controversy easily exceeds CAFA's $5 million threshold.

For example, assuming 2,000 class members each received at least six violative emails at $500 per email yields $6,000,000, exclusive of attorneys' fees and the value of the injunctive relief that


MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

Plaintiffs seek and excluding treble damages, which only increase the amount if considered. *See also Liss*, 2026 WL 1392327, at *4 (finding the CAFA amount in controversy met in similar case).

Even using a per-recipient basis, the amount in controversy is met. As to the Plaintiffs and diversity, Plaintiffs would not exceed $75,000 no matter how their individual damages are calculated. However, given the amount of time and resources required to bring and litigate any litigation in federal court, attorneys' fees here will likely be significant. Plaintiffs have at least eight attorneys representing them, and it is fair to assume that those attorneys will spend more than 200 hours each on this case. Being conservative, attorneys' fees could be well over $1 million in billable hours in the aggregate. While this does not clear the $5 million CAFA threshold, it meets the $75,000 threshold for diversity.

As to CAFA, assuming a class of 2,000 on a $500 per-recipient basis, the amount of statutory damages could be at least $1 million and up to $3 million if trebled, exclusive of fees. Adding fees takes it to $4 million. But it is not difficult to get to over $5 million from here, given that the Court may also factor in requests for injunctive relief. As courts have noted, "the requirement of the statutory minimum amount in controversy can be satisfied in an injunctive case . . . by showing [*inter alia*] that the injunction would force the defendant to forgo a benefit to him that is worth more than the threshold amount specified in the diversity statute…." *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 610 (7th Cir. 1997). In other words, the cost of a defendant's compliance with an injunction is part of the calculation. *See Rodgers v. Cent. Locating Serv., Ltd.,* 412 F. Supp. 2d 1171, 1179 (W.D. Wash. 2006); s*ee also Hunt v. Wash. St. Apple Advertising Comm'n,* 432 U.S. 333, 347 (1977)*; Enriquez v. Sirius XM Radio, Inc.*, 2022 WL 4664144, at *2 (E.D. Cal. Sept. 30, 2022).

Here, complying with an injunction to stop all "further violations" of the CEMA or the CPA (*see* Dkt. 1-1, ¶ 137) would effectively cause DXL to have to cease the alleged activity ***nationwide***—*i.e.*, to stop all emails about "limited time" sales (a very common lawful practice)—even if such activity is regulated or not deemed unlawful in the other states where it does business. This is because there is no way to tell from email addresses who might be a Washington resident. This could result in DXL losing untold millions of dollars in sales, pushing the amount in controversy well over the CAFA threshold. *See also generally* Dkt. 1 (discussing this issue and how the amount in controversy is met).



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610

Dated: September 24, 2026,

Respectfully submitted,

By: s/ *A. Paul Heeringa*

John W. McGuinness (*pro hac vice* forthcoming)
A. Paul Heeringa (admitted *pro hac vice*)
**MANATT, PHELPS & PHILLIPS, LLP**
2049 Century Park East, Suite 1700
Los Angeles, CA 90067
JMcGuinness@manatt.com
PHeeringa@manatt.com

Rossi F. Maddalena, WSBA #39351
**MERRICK, HOFSTEDT & LINDSEY, P.S.**
3101 Western Avenue, Suite 200
Seattle, WA 98121
Tel. (206) 682-0610
Email: rmaddalena@mhlseattle.com

***Attorneys for Defendant***

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties or their counsel of record**.**

By: s/ *A. Paul Heeringa*



MERRICK, HOFSTEDT & LINDSEY, P.S.
ATTORNEYS AT LAW
3101 WESTERN AVENUE, SUITE 200
SEATTLE, WASHINGTON 98121
(206) 682-0610