UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULY DODSON, TENADORE FOWLER, RYAN TAMM, on their own behalf and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DESTINATION XL GROUP INC., doing business as DXL BIG + TALL,<br><br>Defendant. | CASE NO. 2:26-cv-00866-JNW<br><br>ORDER REMANDING CASE |

## 1. INTRODUCTION

This matter comes before the Court on the parties' responses to the Court's order for supplemental briefing on whether Plaintiffs July Dodson, Tenadore Fowler, and Ryan Tamm (collectively, "Plaintiffs") have Article III standing, and whether the action should be stayed pending the Ninth Circuit appeals in *Montes v. Penney OpCo, LLC et al.*, Case No. 25-8045 and *Montes v. SPARC Grp., LLC*, Case No. 23-35496. Dkt. Nos. 42, 43. For the reasons stated below, the Court finds it

lacks subject matter jurisdiction, DENIES Defendant's request for a stay, and REMANDS the cases to King County Superior Court.

## 2. BACKGROUND

Plaintiffs filed this putative class action in King County Superior Court against Defendant Destination XL Group, Inc. doing business as DXL BIG + TALL. Dkt. No. 1-1 at 5. Plaintiffs claim that Defendant violated Washington's Commercial Electronic Mail Act ("CEMA") and Consumer Protection Act ("CPA") by sending consumers marketing emails with false or misleading subject lines. *Id.* at 22. Defendant removed this action to this Court, asserting federal jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). Dkt. No. 1.

On August 27, 2026, the Court ordered supplemental briefing on two issues: first, whether Plaintiffs have Article III standing, and if not, whether the case should be remanded or stayed pending the Ninth Circuit's decision in the *Montes* appeals; and second, whether CEMA damages are calculated per-email or per-recipient, and whether the amount in controversy satisfies the minimum for diversity or CAFA jurisdiction. Dkt. No. 39 at 3. Because Article III standing is a threshold issue, the Court starts there. *Hutton v. Papa John's USA Inc.*, No. C25-1922-KKE, 2026 WL 2210133, at *1 (W.D. Wash. July 31, 2026).

## 3. DISCUSSION

### 3.1 Legal standard.

"Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). If a plaintiff lacks Article III standing, the Court does not have subject matter jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). The standing inquiry begins with a simple principle: "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." Id. at 423 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

"[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc.* (*Spokeo* II), 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo, Inc. v. Robins* (*Spokeo I*), 578 U.S. 330, 341 (2016) *as revised* (May 24, 2016)). To establish a concrete injury, "the plaintiff must allege a statutory violation that caused him to suffer some harm that 'actually exist[s]' in the world; there must be an injury that is 'real' and not 'abstract' or merely 'procedural.'" *Id.* (quoting *Spokeo I*, 578 U.S. at 340). Put simply, "an injury in law is not an injury in fact."

*TransUnion*, 594 U.S. at 427. The key question is whether the plaintiff has identified "a close historical or common-law analogue" for the asserted injury. *Id.* at 424. Physical and monetary harms readily qualify, and so can some intangible harms, such as intrusion upon seclusion. *Id.* at 425.

"The burden of establishing removal jurisdiction, even in [CAFA] cases, lies with the defendant seeking removal." *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011). So Defendant, as the party invoking federal jurisdiction, must establish "the facts necessary to support standing with the manner and degree of evidence required at the successive stages of the litigation." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022). At the pleading stage, the Court looks to the allegations in the complaint. *See id.* at 1099 & n.2. If the Court determines, after removal, that it lacks subject matter jurisdiction, it must remand the case to state court. 28 U.S.C. § 1447(c). Remand, not dismissal, is the proper remedy. *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016).

### 3.2 Defendant has not shown that Plaintiffs have suffered a concrete injury.

Defendant contends that, while Plaintiffs allege no actionable or recoverable harm, they suffered a concrete injury for standing purposes. Specifically, Defendant argues the "receipt of emails with allegedly false or misleading subject lines in violation of CEMA alone constitutes an injury in fact sufficient for Article III standing." Dkt. No. 42 at 6.

Defendant's position runs up against "an ever-growing list of decisions [in this District] finding that the mere receipt of alleged misleading or false marketing

email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." *Stutsman v. Sirius XM Radio LLC*, No. 2:25-CV-01113-LK, 2026 WL 2445129, at *4 (W.D. Wash. Aug. 20, 2026) (collecting cases). *See also Hutton*, 2026 WL 2210133, at *2 ("[T]he Court finds that merely alleging a CEMA violation is insufficient to allege a concrete injury to [the plaintiff]."); *Aronson v. 5 Star Apparel LLC*, No. C25-2691JLR, 2026 WL 2332885, at *2 (W.D. Wash. Aug. 4, 2026) ("[E]ven if [the plaintiff] has plausibly alleged that [the defendant] violated CEMA, he cannot pursue his claim in this court because he failed to allege an Article III injury-in-fact."); *Samaduroff v. David Peyser Sportswear Inc*, No. 3:26-CV-05275-TMC, 2026 WL 2675977, at *2 (W.D. Wash. Sept. 11, 2026) ("The fact that Plaintiffs received emails allegedly in violation of CEMA does not itself constitute injury-in-fact under Article III.").

The decisions Defendant cites that found standing do not change this result. Dkt. No. 42 at 6–7 (citing *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1005 (W.D. Wash. 2019), *Liss v. Skechers USA Inc.*, 2026 WL 1392327, at *2–3 (W.D. Wash. May 19, 2026), *Devivo v. Sheex*, 2026 WL 775625, at *1-3 (W.D. Wash., Mar. 19, 2026)). *Harbers*, decided before *TransUnion*, found that the alleged CEMA violation "resemble[d] the type of harms remedied by nuisance or fraud actions." 415 F. Supp. 3d at 1008. But those analogues depend on contact the plaintiff did not want. Plaintiffs do not sue over unsolicited emails; they sue over allegedly false and misleading subject lines. *See Stutsman,* 2026 WL 2445129, at *3 ("CEMA does not prohibit unsolicited emails. Instead, it prohibits emails that misrepresent the

sender's identity or contain false or deceptive subject lines.”); *Montes v. Catalyst Brands LLC*, No. 2:25-CV-0281-TOR, 2025 WL 3485827, at *3 (E.D. Wash. Dec. 4, 2025) (when a plaintiff does not allege that the emails were unsolicited or unwanted, “[t]here is not an invasion of privacy or any similar injury to constitute a concrete harm.”). Without referring to Plaintiffs themselves, the Complaint alleges generally that consumers “routinely ‘consent’ to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.” Dkt. No. 1-1 ¶ 21. This falls short of alleging Plaintiffs never consented to receive Defendant’s marketing emails, and thus, it’s distinguishable from *Harbers*. And to the extent that *Liss* and *Devivo* hold that a CEMA violation is itself an injury, the Court respectfully disagrees. As explained above, a legislature’s judgment does not by itself make a statutory violation a concrete harm.

In short, Plaintiffs allege a CEMA violation and nothing more. Because Defendant has not shown that the violation caused Plaintiffs concrete harm, it is not carried its burden to establish Article III standing.

**3.3 Remand is appropriate.**

Citing other cases in this District that have stayed putative CEMA class actions, Defendant urges the Court to wait for the Ninth Circuit to resolve the *Montes* appeals. Dkt. No. 42 at 3. But, in this case, the Court does not find standing to be an open question. It reaches its conclusion based on the allegations in the Complaint, and it need not await further rulings from the Ninth Circuit. Because the Court lacks jurisdiction, it doesn’t reach the parties’ arguments about the

amount in controversy. Accordingly, the Court finds remand is the appropriate course. See 28 U.S.C. § 1447(c); *Polo*, 833 F.3d at 1196.

## 4. CONCLUSION

Accordingly, the Court ORDERS as follows:

1. This case is REMANDED to King County Superior Court, effective FOURTEEN (14) days from the date of this Order. *See* LCR 3(i).
2. The Clerk of Court is directed to CLOSE this case and terminate all pending motions.

Dated this 18th day of November, 2026.

Jamal N. Whitehead
United States District Judge